## Marie L. Dupre *v.* C. W. Caruthers et al.

Natural children cannot take by inheritance the property of a deceased parent, unless they have been duly acknowledged; but natural brothers and sisters may prove their relation, and inherit from each other, although they have never themselves been acknowledged by their parents. C. C. 913, 916.

A judicial recognition of the paternity of a natural child, never acknowledged by the parent, does not entitle the child to the inheritance of the parent's succession.

APPEAL form the First District Court of New Orleans, *Larue*, J. *C. Morel* and *Filleul*, for appellant. *Preaux* and *C. Dufour*, for appellees. The judgment of the court was pronounced by

PRESTON, J. *Louis Dupré*, a colored man, departed this life in New Orleans without legal ascendants or descendants. *C. W. Caruthers* and others claim his succession, alleging that they are his natural brothers; and a niece of the deceased by a natural brother, claims through him. In opposition to them the estate is claimed by *Marie Lorenza Dupré*, who alleges that she is the natural daughter of the deceased. She was neither acknowledged by him in baptism nor before a notary public and two witnesses, but offered to prove her paternity by parol and other testimony not amounting to a formal acknowledgment.

If any one of the collateral claimants have shown their relation to the deceased, it raises the question, whether they or the unacknowledged natural daughter shall inherit the estate.

The deceased, *Louis Dupré*, and *Honoré Caruthers* were baptised as sons of the same mother; and *Armantine Dupré* was baptised as the daughter of *Céleste*, whom her uncle, deceased, buried as his sister, declaring her before the recorder of deaths to be his sister.

The case therefore clearly raises the question, whether the natural brothers and niece of the deceased, or his unacknowledged natural daughter are entitled by law to his inheritance.

An article in the old code, precisely similar to article 916 of the present code, gave the estate of a natural child deceased without posterity to the father or mother who has acknowledged him. In the case of *Pigeau* v. *Duvernay*, a contest arose between the natural brothers and sisters and the natural father of a deceased child, for his succession. The father had incontrovertible evidence of his relationship, but had not acknowledged him before a notary and two witnesses, nor in baptism.

Judge Martin, in delivering the opinion of the late Supreme Court, said: "The acknowledgment is required to be formal: the manner of making it is pointed out by law. This formal or legal acknowledgment differs from the incontrovertible evidence of natural paternity resulting from the *res judicata*. The latter gives a right to alimony; the former to that, and sometimes to the inheritance of the parent, in others to legitimation. As the evidence on which courts of justice are authorized to pronounce the natural parentage is weaker than that which results from a formal acknowledgment, and is not always morally conclusive, the legal consequences of adjudged and acknowledged parentage are thus different," 4 M. R. 266.

That was the case of a natural father claiming the estate of his unacknowledged child. In this case an unacknowledged child claims the estate of her natural father. The 913th article of the Civil Code declares, that "natural children are called to the inheritance of their natural father who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations nor surviving wife, and to the exclusion only of the State. In all other cases they can only bring an action against their natural father or his heirs for their alimony."

This provision of law, that acknowledged natural children can inherit only to the exclusion of the State, is equivalent to the declaration, that natural children not acknowledged, cannot inherit at all. Indeed, inheritance is the creature of express law; and there is no law declaring that an unacknowledged natural child can inherit from his father. So, to enable the natural child to take by donation or by the will of his father, our code expressly requires that the child shall have been acknowledged by the parent. Article 1473. It is true, a general impression exists, that the natural child not acknowledged may receive by donation *inter vivos* or by will, from his parents, the proportions of his property mentioned in this article, in the cases mentioned. Whether this impression would be sanctioned by the decision of our courts it is not necessary now to say. It may be remarked, however, that there is a clear distinction between the capacity to receive by inheritance and by donation. The first is the creature of law— without which it could not exist; the last is the creature of will, when not prohibited by law. Still, if the decision should be in accordance with the general belief, it must be acknowledged that the term *acknowledged* in this particular article of the code would be surplusage.

But if any other interpretations were given to the articles of our code than that given by our late Supreme Court, the term *acknowledgment*, so often used in the code, would have no meaning in any article. The articles above mentioned, in relation to inheritance, are so clear and free from ambiguity that it is impossible to yield to the conclusions of the French tribunals upon similar articles of the Napoleon Code, that a judicial recognition is equivalent to the voluntary acknowledgment of the parent. And, carrying out the idea of Judge Martin, we can well conceive that, there being no absolute certainty of the father of the natural child, the Legislature would not permit the laws of inheritance to depend on such uncertainty; and especially when the proof of the descent leads to disreputable investigations in court, aggravated by all the indelicacy which cupidity can excite.

That the latter consideration had great weight, can be inferred from the 7th law, 15th tit. of the 4th Partidas. This law authorizes the parent to legitimate his natural child by writing; but forbids him to state that he is a natural child, under the penalty that the legitimation shall be invalid. It contains other curious provisions of the same kind, and was reënacted *in toto* by our Legislature in 1831, although not reported by the compilers of our digests.

The case of *Lange et al.* v. *Richoux et al.*, 6 L. R. 560, is greatly relied upon to show, that the natural child may prove his paternity in order to inherit his father's estate in preference to the natural brothers and sisters and their descendants. And our late Supreme Court certainly use general expressions to that effect. But those general expressions are to be referred to the case then before the court. In it natural sisters were allowed to prove their maternal descent, for the purpose of inheriting from each other under article 917 of the code, which prescribes, that "if the father and mother of the natural child died before him,

DUPRE
v.
CARUTHERS.

the estate of such natural child shall pass to his natural brothers and sisters or to their descendants."

The same proof was allowed on behalf of the natural brothers and sisters of the deceased in the present case. It seems strange, it must be confessed, that natural children may inherit from each other through their common mother, when they could not inherit from the mother herself, unless she had duly acknowledged them ; and absurd, that a natural child should be prohibited from proving his maternal parentage, except by his mother's avowal of her shame, on record, or by baptism before the church, as required by article 912 of our code, in order to inherit to the exclusion of ascendants and collaterals. But we know the objects of the Legislature : in the first place, to honor matrimony, which is of such incalculable importance to society ; and, in the next place, to discourage concubinage, which is the cause of so much dissoluteness and evil. To prevent it, the Legislature hold out the strongest motive which can influence a parent— the legal disinherison of his offspring, unless he avows his shame before a notary public and witnesses, or in the face of the church.

It is true, the legislation has ever failed in this object ; for, probably no one was ever deterred from concubinage by the consideration that his innocent offspring would be the victim of his guilt. And the only effect has been, that the guilty parents have eaten the grapes, while the innocent children's teeth, with tears in their eyes, have been set on edge. But still, it is the law, and must be obeyed until it is repealed.

The judgment of the district court is therefore affirmed, with costs.

EUSTIS, C. J. and SLIDELL, J. concurring. We concur in the legal results presented in the opinion and decree prepared by Judge Preston.

ROST, J. dissenting. This is a contest for the succession of *Louis Dupré*, f. m. c., who was never married and had no legitimate ascendants, between *Lorenza Dupré*, who alleges herself to be his natural daughter, his natural brothers, and one of his nieces.

*Lorenza Dupré* has not been acknowledged by the deceased, either in an act of birth or baptism, or by an act before a notary and two witnesses. But on the trial of the cause, she offered to prove her natural paternal descent, under the provisions of arts. 226 and 227, C. C.

The counsel for the adverse parties objected to this evidence on two grounds : 1. That natural children must have been acknowledged by their father in the registry of birth or baptism, or by an authentic act, before they can inherit his succession, and that the proof offered to be made in this case only entitles them to alimony. 2. That if this rule should not apply to white natural children, art. 221 of the code expressly ordains that no other proof of acknowledgment shall be admitted in favor of children of color.

The court sustained the objections, and the counsel for *L. Dupré* took several bills of exception, which come up with the record. The evidence of *Lorenza Dupré* having been excluded, her petition was dismissed, and she has appealed.

Many questions both of law and fact were argued at bar ; but the only ones which I will examine, are those presented by the bills of exception. The first of those question came before our predecessors in the case of *Lange et al.* v. *Richoux et al.*, 6 L. R. 570, and it was then held that the words used in article 221, C. C., are not prohibitive ; and that so far from saying that a declaration before a notary, or in the registry of birth or baptism, shall be the only proof permitted, the code expressly permits other modes of proof both of paternal

and maternal descent, without any restriction as to the purpose for which it may be allowed.

The court, in that case, would not recognize the distinction pressed upon us, that the voluntary acknowledgment of the father, made in one of the forms prescribed by law alone, enables natural children to inherit, and that the judgment establishing the filiation under art. 226, 227, C. C., only entitles them to alimony. This distinction was unknown to the former laws of the country, and has been proscribed by the courts and jurisconsults of France in the application and interpretation of the analogous articles of the Napoleon Code. 2 Toullier, p. 226, No. 936. Delvincourt, vol. 1, note 8 to p. 94 and p. 237. 12 Serey, 2d part, p. 418. Marcadé, vol. 2, p. 46. Ib. vol. 3, p. 119, 120. The rule there is the same as was adopted by our predecessors.

As there is no material difference between the provisions of our code and those of the code of France, the authority of the French commentators and courts is entitled to great weight. I think that the Legislature of 1824 did not intend any radical change in the previous legislation on this subject. The very article (917) of the code, under which the natural brothers and sisters of the deceased claim the succession, is inconsistent with that hypothesis. It provides that if the father and mother of the natural child die before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants. That article must be taken in connection with the one which precedes it; the latter is in these words: " The estate of a natural child deceased without posterity, belongs to the father or mother who has acknowledged him, or in equal portions to the father and mother, when he has been acknowledged by both of them."

The same rule as to the proof of filiation must be applied to both; otherwise we would be led to the absurd and unnatural conclusion, that natural brothers and sisters may inherit from their natural brother to the exclusion of his own children. If natural brothers can, in such a case as this, prove their filiation under arts. 226 and 227, *Lorenza Dupré* must be permitted to make the same proof. If, on the other hand, her filiation is to be established under art. 221, the same proof of the filiation of her opponents is necessary; and as it has not been furnished, they cannot inherit.

It is urged, that the words "duly acknowledged" have a technical meaning which we must look for in the code itself. Perhaps they have, but their meaning should be gathered from all the articles of the code which treat of the same subject. The construction put upon art. 913, by the appellees and by the district judge, will not bear the test of examination. That article provides that natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife ; and that in all other cases, they can only bring an action against their natural father or his heirs for alimony.

The words, *in all other cases,* do not refer, as erroneously assumed, to the single case in which the natural child has not been duly acknowledged, but most clearly to the cases in which the father has left legitimate descendants or ascendants, or collateral relations, or a surviving wife. Under that article, the only requisite is that the natural child should have been duly acknowledged.

It is said that art. 258 recognizes the distinction contended for between the voluntary and the judicial or forced acknowledgment. That article provides, that in order that natural children may have a right to sue for alimony, they must have been legally acknowledged, or their filiation must be established by a

DUPRE
v.
CARUTHERS.

judgment. It draws the distinction between the voluntary and the forced acknowledgment; but it is to be observed that this and the other articles which refer to the voluntary acknowledgment, invariably designated it by the name of legal acknowledgment.

Article 913, under which *Lorenza Dupré* claims, does not require the legal acknowledgment. It calls to the succession of the natural father, the natural child who has been duly acknowledged. The words made use of, so far from keeping up the distinction between the two kinds of acknowledgment, are of general import, and include them both.

The case of *Jobert* and *Anne Claudine* v. *A. Pitot*, in 4th Ann. 305, was rightly decided. But the reasons given for the decision are not satisfactory to me. Further argument and the new authorities cited in this case have convinced me that in all cases in which proof of paternal descent is admissible, it may be made under the provisions of arts. 226 and 227 of the code.

It may be conceded that the decision in the case of *Lange*, to which I adhere, conflicts with the previous decision in the case of *Pigeau* v. *Duvernay*, 4 M. R. 266; but it must be observed, that this decision was made under the Old Code, which does not contain the provision found in art. 221 of the New Code, that no other proof of acknowledgment but that derived from an authentic act or from the registry of birth or baptism, shall be admitted *in favor of children of color*. This reservation says, as plainly as language can say it, that other proof of acknowledgment shall be admitted in all cases not excepted, without regard to the object for which the proof is made. It is a legislative interpretation of which our predecessors had not the benefit when they decided *Pigeau's* case. The other proofs of acknowledgment authorized, are those mentioned in article 227 as making proof of filiation; and the acknowledgment thus established is, under the law, a due acknowledgment which entitles the natural child to inherit, as well as the legal or voluntary acknowledgment. The opposite construction leads to the consequence that the child who has been reared by his mother and is known to be the issue of her body, who has dwelt with her all his life as her child, and been faithful in the discharge of filial duties, cannot inherit from her without an acknowledgment in an authentic form. Such a state of things has no foundation in motives of public policy, is repugnant to the enlarged humanity of the age, and shocking to reason and common sense.

It is said, that the judicial or forced acknowledgment only entitles the natural child to alimony. The law does not say so; but, in my opinion, says the very reverse. The fair intendment of art. 914 of the code is, that bastard, adulterous and incestuous children, are the only ones who do not enjoy the right of inheriting the estates of their fathers and mothers in the cases provided for by the two preceding articles.

*Lorenza Dupré* is neither an incestuous nor an adulterous child; and if she can make proof of the acknowledgment alleged, her father is not unknown and she is not a bastard. C. C. 220. Where is the law, then, which renders her incapable of inheriting.

The error which I combat originated in the misinterpretation of the words *in all other cases*, in art. 913, to which I have already alluded. The correct interpretation of those words harmonizes with and supports the view I have taken.

The authentic forms of acknowledgment which the law establishes, are designated by the code as legal acknowledgments. Acknowledgments resting *in pays* and to be verified by a judgment are judicial or forced acknowledgments,

both are alike due acknowledgments. The lawgiver does not distinguish between them; and I am at a loss to discover upon what authority we can do so.

The avowed purpose of this construction is to honor matrimony and to discourage illicit connections. But its inevitable result must be the very reverse of what is intended. Arts. 1470 and 1473 C. C., which create incapacities against natural children to receive by donations *inter vivos* or *mortis causâ*, limit the incapacity to such natural children as have been acknowledged. Now, it must be conceded, that the expression *acknowledged natural children* has the same meaning in those articles, as in those which limit and regulate the capacity of natural children to inherit *ab intestato.* If the latter articles are interpreted as having exclusive reference to acknowledgment made in the registry of births or baptisms, or by authentic act, the other articles must be understood in the same sense; and as legal incapacities are *stricti juris*, and can never be extended from one person to another, the necessary consequence is that natural children not thus acknowledged, are placed under no incapacity and may receive from their father, by will, all that a stranger could receive. So that under this construction, while the natural child is deprived of the right of inheriting his father's succession, in the rare cases in which the father leaves no relations and no surviving wife, a state of things is created under which the father may give his natural child, in all cases, his entire estate, if he leave only collaterals; two-thirds of it, if he leaves but one legitimate child; one-half if he leaves two; and one-third if he leaves a greater number.

It is further contended, and it was held by the court below, that *Lorenza Dupré*, being a child of color, and article 221 making no distinction between children of color descended from white or colored parents, no other but a voluntary acknowledgment in due form is admissible under that article.

The error of this argument consists in isolating art. 221 from other articles in *pari materiâ*, and applying it without regard to the limitations and exceptions which those articles contain. It is true, that art. 221 ordains, that no other proof of acknowledgment, except of a voluntary acknowledgment in due form, shall be admitted in favor of children of color. But art. 226 also provides, that free illegitimate children of color who have not been legally acknowledged, may be allowed to prove their filiation from a father of color. This disposition undoubtedly limits the application of art. 221 to children of color descended from a white parent. This interpretation is founded in justice and meets the policy of the law.

It has been argued at bar, that *Lorenza Dupré* should have proved her filiation in a separate suit, and that until she complies with that formality, she cannot stand in judgment.

The appellees answered to the merits without excepting to her capacity. It is now too late to do so; her paternal descent may be proved in this suit as any other fact.

I am, therefore, of opinion that the judgment in this case should be reversed; that the intervention and opposition of *Lorenza Dupré* should be reinstated, and the case remanded for further proceedings according to law, with direction to the district judge to allow *Lorenza Dupré* to prove her paternal descent in conformity with the provisions of art. 226 and 227 of the Civil Code.