(51 South. 77.)

No. 17,566.

HODGES' HEIRS v. KELL et al.

(Jan. 3, 1910.)

*(Syllabus by the Court.)*

1. LEGALITY OF ADOPTION.

Plaintiffs, the collateral heirs of John E. Hodges, contest the legality of an act by which he adopted two of his illegitimate colored children.

2. ADOPTION (§ 5*)—BY WHITE MAN OF ILLEGITIMATE COLORED CHILDREN.

The power of Hodges at the time of the conception of the children to have formally acknowledged or to have legitimated them is the test to be applied to ascertain whether the act of adoption was legal. There was no legal impediment existing in this case at the time of the conception of the children to Hodges acknowledging or legitimating them. The judgment appealed from is therefore affirmed.

[Ed. Note.—For other cases, see Adoption, Dec. Dig. § 5.*]

Appeal from Ninth Judicial District Court, Parish of Madison; F. X. Ransdell, Judge.

Petition by certain persons to be recognized as the heirs of John E. Hodges, to which Edward Hodges and Thomas P. Kell, executor, and others, answered. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. M. Murphy and John B. Stone, for appellants. David M. Evans, A. L. Slack, and Edwin T. Merrick, for appellees.

Statement of the Case.

NICHOLLS, J. The plaintiffs alleged that they are the sole heirs of John E. Hodges, who died in the parish of Madison on the 16th of July, 1906. They set out their respective relationship to said deceased as collateral heirs of the deceased. They allege: That at the time of his death he left an estate in Louisiana worth some $15,000 or $20,000. That he purported to have left a last will and testament in nuncupative form before O. P. Hebert, notary public, on April 10, 1906, in which Thomas P. Kell was named executor of the will, in which will certain persons were named, to wit, Eliza Kline, Cornelia Johnson, wife of Charlie Johnson, John Edward Hodges, Jr., Bertha Winbush, Lucinda Gant, wife of Mat Gant, Katie Hodges, Willie Hodges, and Blandina Hodges.

That the said Thomas P. Kell qualified as executor under said will and took possession of all the property, rights, and credits of the estate and succession, and now holds possession of same under said will and testament. That the said Eliza Kline was a negro woman of African blood, and that the said John Edward Hodges, deceased, never married and never had any legitimate children or descendants, and left no living ascendants, and that he lived with the said Eliza Kline at his domicile in said parish in open and notorious concubinage and adultery for 30 years, and up to and prior to the time of his death, and the said Cornelia Johnson, John Edward Hodges, Jr., Bertha Winbush, Lucinda Gant, Katie Hodges, Willie Hodges, and Blandina Hodges are, each and all, illegitimate children and bastard offspring of the said John Edward Hodges, deceased, begotten by him and born from the body of the said Eliza Kline, in concubinage, and had never been legitimated by the said John Edward Hodges, deceased, and that under the laws of the state their position, at best, is that of illegitimate or natural children, who cannot inherit from their natural father, and can only take, if at all, one-fourth of his estate under a valid donation inter vivos or mortis causa.

Petitioners are informed that said natural children claim to be the owners of the real estate belonging to said succession, consisting of the following described lands situated in said parish, to wit: All of section 40, except 29.37 acres in the N. W. ¼ of said section, S. W. ¼ section 46, all fractional sections 13, 14, and 45, in T. 15 N., range 14 E., worth the sum of $10,000; that petitioners are informed that said natural and illegitimate children claim to have had said prop-

erty and other property donated unto them by the last will and testament of the said John Hodges.

Petitioners deny that said will gives, bequeaths, or donates any part of the property of said succession to said natural illegitimate children, or that the testator purported or intended to give, bequeath, or donate any part of his property or succession to them or to any one of them, but averred, in the alternative, should the court hold that said will and testament does give or purport to give and bequeath any part of said property unto said natural illegitimate children, then that said will to that extent is void, and contains provisions contrary to law and prejudicial to petitioners' rights, and should be set aside and annulled; that said will being null in so far as it purports to give any part of said property or succession to said natural illegitimate children of the deceased, that said natural illegitimate children not being entitled under the law to take or to inherit from their natural father, that, therefore, they have no rights in or to the said succession or to the property thereof, and that all of the property of said succession should be decreed to belong to petitioners, the lawful heirs of deceased; that the executor has never filed any account of his gestion in said succession, and is indebted unto said succession in a large sum.

In view of the premises, petitioners pray: That said Thomas P. Kell, executor, said Corinne Johnson, and her husband, Charles Johnson, John Edward Hodges, Jr., Bertha Winbush, and her husband, Albert Winbush, Lucinda Gant, and her husband, Mat Gant, Katie Hodges, Willie Hodges, and Blandina Hodges be each cited to appear and answer hereto that petitioners be recognized as the sole heirs and only lawful heirs of John Edward Hodges, deceased.

That the said last will and testament of John Edward Hodges, deceased, be decreed not to have given or bequeathed any of the property of said testator unto any of the said natural children or to said concubine. That said illegitimate natural children's claim, as legatees, under said will be rejected, because said will and testament contains no bequest to them. That, in the event the court should hold that there is a purported bequest in said will unto said natural children, then, and in that event, that such bequest be set aside and avoided, and that the will be declared null to that extent. Petitioners pray that the executor be ordered to file a full and fair and final account of his gestion in the administration of said succession and ordered to pay into court for the benefit of petitioners or to pay to petitioners whatever balance shall be found in his hands due to said succession. That petitioners be recognized as the sole legal heirs of John Edward Hodges, deceased, and that they have judgment against all the said defendants decreeing petitioners the owners of all the property of the succession of John Edward Hodges, deceased, and entitled to the immediate possession free from the claims of any of the defendants, and that the said administration be terminated, and for full, general, and equitable relief, and for all costs.

The executor and legatees answered, pleading, first, a general denial. They specially denied that plaintiffs were the heirs of John E. Hodges, or in any manner entitled to his estate or any portion thereof. They alleged that said Hodges left no heirs other than those mentioned as legatees in his will, acknowledged by him, duly probated in your said court, and that the said legatees are in law and equity entitled to the residuum of his said estate, and should be placed in possession. In view of the premises, respondents pray that the demand of said plaintiffs be rejected, and that they be hence dismissed,

with costs; finally, for full and general relief.

The state of Louisiana intervened in the suit, and, after making allegations appropriate to the prayer, it prayed that there be judgment in its favor decreeing that John E. Hodges left no lawful heirs, that he died without heirs; that he left neither lawful ascendants, descendants, or collateral relations; that he left no surviving wife nor acknowledged children; that all of the property of his estate, after payments of debts, be decreed to belong to it, and after due administration be turned over to it; that the demands of plaintiffs and defendants be rejected. The executor answered the intervention, denying all of the allegations of the petition. He averred that the legatees were the acknowledged children of the testator who had the legal right to leave them as his legatees; that the intervener had no right or interest to claim the estate or any part thereof; that under the law natural children duly acknowledged as such in default of legal descendants, etc., are called to the estate, to the exclusion of the state; that the deceased not only in his last will and testament had acknowledged his said natural children, but in addition thereto had publicly and at all times and places held them out to the world as his offspring, and had so publicly admitted, not only their paternity, but their maternity also. He denied the right of the state to stand in judgment, and that it had any interest in the subject-matter, and prayed that the intervention be dismissed.

Plaintiffs filed a supplemental petition, in which they recited the fact of their having in the petition originally filed and reiterated the same, that Willie Hodges and Blandina Hodges, minors, claimed the property of said succession of Hodges under a pretended will which had been probated in the district court for Madison parish; that said will was null and void because said minors, claiming to be legatees under said will, were the illegitimate unacknowledged children of the testator, and because no legacy had been given them under said pretended will; that said minors had been made parties and cited in the suit, had answered, but that plaintiffs had discovered that they were minors, and not represented. They prayed that they should have a representative appointed to represent them, as they had no tutor. They prayed that a tutor ad hoc be appointed to represent said minors, and that they be cited through him; that petitioners have judgment against them annulling the said last will and testament and plaintiffs to be the owners of the property of said succession as his sole heirs.

A. L. Slack was appointed by the court to represent Willie and Blandina Hodges, claimed to be minors and legatees under the will of their father, appeared, and pleaded a general denial of every allegation in plaintiffs' petition. He denied that the plaintiffs were the collateral relations of the deceased, and averred that they were simply interposed for the purpose of personating said heirs, and by art and unjust means to wrest the legitimate legatees from their possession, the acknowledged children of the deceased. He prayed that plaintiffs' demand be dismissed.

The intervention filed on behalf of the state was abandoned before judgment.

### On Motion to Dismiss.

The motion to dismiss has no merit, and it is refused. The court fixed the amount of the bond to be given. If it was deemed too small, application should have been made to increase it. If too small for a suspensive, the appeal would still be maintained as a devolutive, appeal. Pecot. v. Judge, 27 La. Ann. 231; Blanchin v. Steamer Fashion, 10 La. Ann. 345; State ex rel. Block & Son v. Judge, 44 La. Ann. 564, 10 South. 866, and authorities cited.

On the 23d of January, 1909, the district court rendered judgment in favor of the defendant rejecting the demands of the plaintiffs at their costs. The plaintiffs, after an unsuccessful application for a new trial, moved for and obtained an order of appeal, both suspensive and devolutive, on furnishing bond to the amount of $100. The case is now before this court on that appeal.

Defendant moves for the dismissal of this appeal:

(1) Because the judgment rendered by the district court was one rejecting the demand of the plaintiffs to be recognized as the heirs of the deceased, Jno. E. Hodges. That from said judgment the said plaintiffs asked for a suspensive appeal, when in truth and in fact there was nothing to suspend, as the judgment was not governed either by Code Prac. arts. 575–5 or 575–7, and such an appeal was unauthorized.

(2) That, not being entitled to a suspensive appeal that there was nothing to suspend the same cannot act as a devolutive appeal because it does not cover the costs of both courts, and is insufficient in amount.

(3) That a suspensive appeal will operate as a devolutive appeal only in such cases where such an appeal is permitted, or when there is a judgment to be suspended; otherwise such an appeal is unauthorized, and cannot serve as the basis of a devolutive appeal.

In view of the premises, appearers move that said appeal be dismissed, and they hence discharged without a day, and for all such orders in the premises as law and justice may require.

In the opinion accompanying the judgment of the district court the court declared that it held:

(1) That the plaintiffs were the collateral kin of John E. Hodges, deceased.

(2) That the natural children of said deceased named in the will were legally ac- knowledged under the jurisprudence of the state by said deceased.

(3) That the adoption of John E. Hodges and his sister Blandina Hodges, natural children of said deceased, precluded the plaintiffs from inheriting any portion of the estate. We concur in opinion with the trial court on the first point, that is, that "the plaintiffs are the collateral kin of John E. Hodges, deceased, as alleged in their petition." The points remaining for examination are whether the natural children named in the will were legally acknowledged by John E. Hodges, the deceased, under the jurisprudence of the state, and what effect should be given to the will, and, next, whether John E. Hodges and Blandina Hodges were legally adopted by John E. Hodges by the act of October 22, 1898, purporting to adopt them, and what the effect of that act was.

We first direct our attention to the will, which is attacked by the plaintiffs. The best and quickest way to deal with that matter is to transcribe the following extract from that instrument:

"I give and bequeath to Corinne Johnson aged twenty years the wife of Charlie Johnson, Jno. Edward Hodges, Jr. age 24 years—Bertha Wimbush wife of Albert Wimbush age 23 years Lucinda Gant, age 22 years wife of Nat. Gant, Katie Hodges, age 19 years—Willie Hodges girl, age 18 years, Blandina Hodges, age 17 years, all residing on my plantation known as the Johnson Plantation, situated in the Parish of Madison, State of Louisiana, to all the above named persons I give this as a legacy under a universal title. I also bequeath unto Eliza Klein my true and faithful servant who has been in my employ for the last 28 years all of my personal property, such as mules horses cattle wagons farming implements and household furniture that I may be possessed of at my death."

The will is dated on the 10th of April, 1905. The legacy to Eliza Kline (now deceased) is not contested. The objection urged in plaintiffs' petition to the will, that "it bequeaths or donates no part of the property of said succession to said illegitimate children, or that the testator purported or intended to bequeath or donate any part of his property

or succession to them or to any one of them," is evidently leveled at the fact that, while the testator declared that "I give this as a legacy under a universal title," he nowhere declares what the legacy consists of, or what amount, if any, was intended to be given. Reference to the extract from the will shows that the parties named therein were not constituted his heirs, but merely made "legatees," and, further, that those parties were not referred to or recognized as his children. On the face of the instrument the parties might well be in no wise connected with or related to him, as was the case of the wife of Turner in the Matter of Succession of Vance, 110 La. 760, 34 South. 767.

It was admitted on the trial by all parties:

"That the defendants named in the probated will of J. E. Hodges and claiming as legatees under said will were the natural children of said John E. Hodges, deceased, and Eliza Kline, a woman of color and African descent, and that they were all born prior to the year 1894, and it is also admitted that said John E. Hodges and Eliza Kline lived together in the parish of Madison for many years and up to the time of his death cohabited together, and that she and said children were supported by him and treated as his own children, and were called by his surname, although they were never married and never claimed to have been married, said children having been born during the time of said cohabitation."

The court having made the "adoption" by the testator of the two of the parties named in the will (John E. Hodges, Jr., and Blandina Hodges) as the ground upon which it rejected plaintiffs' demand, it becomes necessary to refer specially to the instrument by which that adoption is made to rest. It reads as follows:

"Act of adoption Ed. & Blandina Hodges.
"State of Louisiana.
"Parish of Madison.
"Before me the undersigned authority on this 22nd day of October, A. D. 1898, personally came and appeared John E. Hodges, a resident of the parish of Madison, being above the age of forty-five years, who in the presence of the undersigned witnesses declared that he makes this appearance and executed this instrument for the purpose of adopting as his own children the boy John Edward Hodges, aged fifteen years and the girl Blandina Hodges, age nine years, both residents of said parish, which adoption is made with the full consent and concurrence of their mother, Eliza Kline, of said parish, who joins in this act, and affixes her signature hereto for said purpose. Said Hodges declared that it is his intention by this act to adopt said two children as provided by the laws of the state of Louisiana and to endow them and each of them with all the rights and privileges of adopted children under the laws of the state of Louisiana.

"And said appearers not being able to sign their names each affixes his and her usual mark to this act.

"Done and signed in the presence of James A. Porterfield and George W. Brooks two competent witnesses who sign as such on the day and date first above written.

his
"[Signed]  John E.  X  Hodges.
mark

her
"Eliza  X  Kline.
mark

"In the presence of:
"J. H. Porterfield
"G. W. Brooks.
      "S. S. P. Dangerfield, Notary Public."

This act was not referred to in the pleadings of either the plaintiffs or the defendants, but was introduced in evidence to support the rejection of plaintiffs' demand. It will be noticed that the act was passed in 1898, four years after marriage between white and colored persons had been prohibited. It will be seen further that John E. Hodges, Jr., and Blandina Hodges, whom it was the intention of John E. Hodges to adopt through that act, were not referred to in any way or acknowledged therein as his children.

Appellants contend that the law of adoption contemplates the adoption of the child of another and not that of the person adopting him, and that natural children are outside of the provisions of the law governing the rights of families and relations inter sese; that they have no natural rights resulting from relationship under the different articles of the Code regulating the rights of families and children generally; that they are in a class to themselves, and have only such rights as are granted by special legislation, and expressly to their class. They quote Bouvier's

Law Dictionary defining "adoption" as "the act by which a person chooses another from a strange family to have all the rights of his own child," and Anderson's Dictionary as:

"To take a stranger into one's own family as son and heir—to accept the child of another as his own son and heir."

They cite article 8556 of the Civil Code as declaring that:

"Natural children, even though recognized, make no part of the children properly so called, unless they have been legitimated."

And article 206 as saying:

"Illegitimate children though duly acknowledged cannot claim the rights of legitimate children."

The rights of natural children are regulated under the title of "Successions." They cite article 919 of the Civil Code (under the pleading of successions), which reads:

"Natural children are called to the inheritance of their natural father who has duly acknowledged them when he has left no ascendants nor descendants, nor collateral relations and to the exclusion only of the state. In all other cases they can only bring an action against their natural father or his heirs for alimony."

They urge: That if there be a will, and they be duly acknowledged, they can receive and the natural father who leaves collateral relations, can give them to the extent of one-fourth of his estate and no more under articles 1486 and 1487 of the Civil Code. That whether duly adopted or not, and whether, duly acknowledged or not, they are still natural children claiming from a natural father and subject to the limitations specially imposed by those provisions upon this particular class.

That under the laws of France and under our law acknowledgment is the necessary foundation of any right claimed by an illegitimate child and the effect of the acknowledgment differs according to the nature, intent, and publicity of the acts or declarations recognizing illegitimate relationship, less evidence being necessary to prove paternity than is required to give the status of a natural child duly acknowledged and so authorized

125 LA.—4

to take one-fourth of the estate of his natural father by donations inter vivos or mortis causa. They refer the court specially to the views of the court in Dupre v. Caruthers, 6 La. Ann. 157, 158.

We have referred to the decision of this court in the Succession of Vance. 110 La. 763, 34 South. 767. In that case J. P. Vance was a bachelor. He left no ascendants, but left as his collateral heirs his brothers and sisters. He left a will, in the body of which he declared, "I want Eliza James to have the balance of my real estate and to hold absolutely." On the face of the instrument there was nothing to indicate that Eliza James stood connected in any way with the testator. Apparently she was a stranger to him. The brothers and sisters of the deceased opposed that legacy. They alleged that Eliza James was a free woman of color, the bastard daughter of the deceased, born of a colored mother in the year 1862, and as such incapable of receiving anything from the deceased by donation mortis causa. The court declared that it had been shown to its satisfaction that Eliza James was the child of J. P. Vance, born of a colored mother in 1861 or 1862. It was shown in the evidence by one witness that he had declared to him in conversation that she was his child. It was also shown that she was generally understood and reported to be the daughter of the deceased; that this was spoken of in the neighborhood for years. Several witnesses testified that, before Eliza married James, they had heard her called by the colored people in the neighborhood Eliza Vance. The brothers and sisters were allowed to prove the actual facts of the case under article 207 of the Code, which declared that every claim set up by natural children may be contested by those who have any interest therein. The testimony introduced was allowed to be introduced to break down, not to support, the claim of the special legatee in that case.

The court said that evidence of that character referred to proof of paternal descent rather than paternal acknowledgment, and that it was the acknowledgment of the father which converted the illegitimate child or bastard into the natural child and from which sprang the right with which the natural child is vested by the law. The court held that the father had not under the evidence legally acknowledged the child, so as to convert her into a natural child.

The court referred to the fact that at the time of the birth of the child (in 1861 or 1862) the parents were incapable of contracting marriage—that true it was the legal barrier to marriage was subsequently removed and remained down for years, but during that period no marriage of the parties took place and no acknowledgment of the child was made. Subsequently the law reimposed the barrier to marriage between white and colored people, so that at the time of the confection of the will of Vance and at the time of his death no marriage could have taken place between himself and the mother of the legatee had she been living.

In the case before us at the time of the act of adoption no marriage could have taken place between Hodges and Eliza Kline so as to have legitimated by marriage the children sought to be adopted, and no act having the effect of "legitimating" them otherwise had been passed; so that at the date of that act the status of the children was beyond "legitimation," even though it might be open to "acknowledgment producing legal results" but short of legitimation.

The question therefore is whether the natural father could by the exercise simply of his own will through the method of adoption convert a child then beyond the power of legitimation into a legitimate child with the status of a legal heir, for that would be the forced legal result of giving validity to the act of adoption made at that time and under those circumstances.

Article 214 of the Civil Code declares that any person may adopt another as his child except those illegitimate children whom the law prohibits him from acknowledging, but such adoption shall not interfere with the rights of forced heirs.

Article 200 of the Civil Code declares that a natural father or mother shall have the power to legitimate his or her natural children by an act passed before a notary and two witnesses declaring that it is the intention of the party making the declaration to legitimate such child or children. But only those natural children can be legitimated who are offspring of persons who at the time of conception could have contracted marriage. Nor can a parent legitimate his or her natural children in the manner prescribed in this article when there exists on the part of such parent legitimate "ascendants" or "descendants."

While in the case before us John E. Hodges could not have legitimated the children whom he adopted through marriage with the mother, and while he had not in fact at that time legitimated his children through the method prescribed by article 200, he had at that time the power to have legitimated them or to have formally acknowledged them, for at the conception of those children, as the record discloses, Hodges and Eliza Kline could have contracted marriage.

Those children, therefore, did not fall within the class of children who, by article 214, were taken beyond and outside of the benefits of adoption.

The power of Hodges at the time of the conception of the children to have acknowledged them or to have legitimated them is made by law the list of his right to have adopted them.

For the reasons assigned, the judgment of the District Court appealed from is hereby affirmed.