## MATTHEWS v. GRAND GROVE OF LOUISIANA, U. A. O. D.*
### No. 16683.

Court of Appeal of Louisiana. Orleans.
Dec. 13, 1937.

*Rehearing refused Jan. 10, 1938.

A. J. Woodville, and J. L. Warren Woodville, both of New Orleans, for appellant Mrs. Adele Matthews.

Paul B. Habans, of New Orleans (Warren O. Coleman, of New Orleans, of counsel), for Rozine Haydel.

Quintero & Ritter, of New Orleans, for intervener and appellant Ernest A. Haydel.

Arthur J. Peters, of New Orleans, amicus curiæ.

WESTERFIELD, Judge.

This proceeding, in the form of a concursus, involves the ownership of $500 deposited in the Registry of the civil district court by the Grand Grove of Louisiana, United Ancient Order of Druids, as the proceeds of a certain "mortuary benefit fund certificate" issued to Eugene J. Haydel, a deceased member of the order. There are three claimants, Rozine Haydel, an adulterous bastard negro minor child, the offspring of the deceased, Eugene J. Haydel, and a negress by the name of Hazel M. Granier, who was named by deceased as his beneficiary and designated as his "daughter," and represented in these proceedings by her tutor ad hoc, Paul B. Habans; Mary Haydel, an interdict, the widow of Eugene J. Haydel, represented by her curatrix, Mrs. Adele M. Matthews; and Emile S. Haydel, deceased, represented by Ernest A. Haydel, his administrator.

The lower court held that the fund belonged to Rozine Haydel, the bastard child of deceased, and entered judgment accordingly. The representative of the wife and of the brother have appealed.

By Act No. 115 of 1906 and Act No. 256 of 1912 the Legislature regulated the payment of death benefits by fraternal associations. The latter act, which is amendatory of the first, provides in section 6 that "the payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the member."

The Druids, in conformity with this act, in section 8 of Article IX of its Constitution, provided that the payment of its mortuary benefit fund should be made as follows:

"To anyone of the following:—

"Wife, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption or to a person or persons dependent upon the member * * * within the above restrictions each member shall have the right to designate as beneficiary, and from time to time, have the same changed in accordance with the laws, rules or reguations of the order."

Eugene J. Haydel died in the city of New Orleans on October 8th, 1932. He was, at the time of his death, a member in good standing of the Imperial Grove No. 49 affiliated with the Grand Grove of Louisiana, U. A. O. D. He had named as beneficiary in his mortuary certificate "Miss Rozine Haydel, residing at 1625 Humanity, bearing to me the relation of Daughter." His wife, Mary Haydel, had been an interdict for some time prior to his death, and he had been living with Hazel M. Granier, a negress, the mother of Rozine Haydel, at 1625 Humanity street in the city of New Orleans. The contention of the wife and brother is that the child is neither a relative by blood nor a person dependent within the meaning of the law and the constitution of the fraternal order.

Counsel for the Druids, who concedes that the material interest of his client is merely that of a stakeholder, has, nevertheless, favored us with an able oral argument and elaborate brief opposing the claim of the negro child. He has appeared as amicus curiæ and explains his interest in the matter upon sentimental grounds, saying that the Druids are a fraternal order of International scope, founded in 1781, which now has hundreds of thousands of members, all of

the Caucasian race, all of whom are interested in preventing the funds of the fraternity being devoted to the use of an illegitimate negro child. Counsel for the child objects to counsel for the fraternity appearing as an advocate for or against any one of the litigants upon the ground that his attitude is inconsistent with that of a plaintiff in a concursus proceeding. As we have said, however, he has appeared as amicus curiæ and, as such, we welcome any assistance he may be able to render and will give consideration to the legal contentions advanced by him, which are similar to those presented by the wife and brother.

Taking up the first ground of opposition to the claim of the beneficiary we examine the scope of the meaning of the clause "relative by blood to the fourth degree."

Our attention is directed to the following articles of the Revised Civil Code:

Article 238. "Illegitimate children, generally speaking, belong to no family, and have no relations; accordingly they are not submitted to the paternal authority, even when they have been legally acknowledged."

Article 240. "Fathers and mothers owe alimony to their illegitimate children, when they are in need.

"Illegitimate children owe likewise alimony to their father and mother, if they are in need, and if they themselves have the means of providing it."

Article 241. "Illegitimate children have a right to claim this alimony, not only from their father and mother, but even from their heirs after their death.

Article 242. "But in order that they may have a right to sue for this alimony, they must:

"1. Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or they must have been declared to be their children by a judgment duly pronounced, in cases in which they may be admitted to prove their paternal or maternal descent;

"2. They must prove in a satisfactory manner that they stand absolutely in need of such alimony for their support."

Article 245. "Alimony is due to bastards, though they be adulterous and incestuous, by the mother and her ascendants."

Article 920. "Bastard, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the cases above

mentioned, [duly acknowledged children inheriting from their natural mother and their natural father. Articles 918-919], the law allowing them nothing more than a mere alimony."

Article 1488. "Natural fathers and mothers can, in no case, dispose of property in favor of their adulterine or incestuous children, unless to the mere amount of what is necesssary to their sustenance, or to procure them an occupation or profession by which to support themselves."

The conclusion which counsel draws from a consideration of these articles is thus stated in his brief: "From the above, it will be seen that illegitimate children generally speaking, and particularly adulterous and incestuous bastards, belong to no family and have no relations; hence, under Act 256 of 1912, Rozine Haydel, the beneficiary named by Eugene J. Haydel in the benefit certificate as his daughter, but who is, in truth and in fact, an adulterous bastard negro child, born of an illicit relation between a white man and a negro woman, is not to him a relative by blood to the fourth degree."

It is also contended that since Rozine Haydel is not, in a legal sense, the daughter of the deceased, her designation as beneficiary falls and the case is as though an ineligible beneficiary had been named or none at all, with the result that the fund must be disposed of under the statute of 1912 or in accordance with the provisions of the Constitution of the fraternity not inconsistent therewith. With reference to this contention we pause long enough to say that it is entirely without merit because, if Rozine Haydel was otherwise eligible to receive the mortuary fund, an improper description as daughter, or son, or father or mother, would not affect her right to the fund, since it is the individual named as beneficiary and not the description of her relationship to the deceased which controls.

"Misnomer of the person named as beneficiary does not defeat his designation if the intent to nominate him is clear; and a statement of the relation that the beneficiary bears to the member is regarded as descriptio personae, so that its falsity does not invalidate the designation if the beneficiary is eligible as such, unless the person intended to be made beneficiary is thereby rendered uncertain." 45 Corpus Juris p. 193.

The case of Chance v. Grand Lodge, Knights of Pythias, State of Louisiana, 13 La.App. 362, 125 So. 894, relied upon by

counsel, is not in point. In that case this Court held that a wife was without interest to question the payment of insurance to the beneficiaries named in the policy upon the ground that they were illegitimate because, if her contention was upheld, she could not benefit, as she had no vested interest in the proceeds, not having been previously named as beneficiary and there being no provision of law or of the constitution or by-laws of the fraternal order requiring payment to be made to her in the absence of a named eligible beneficiary.

It is contended that consideration of public policy should control our interpretation of the statutory and fraternity provisions as affecting the designated beneficiary, "a child conceived in illicit cohabitation between a white man and a negro woman while the wife of the white man was still alive." The following from 19 R.C.L. § 79, quoted in Wright v. District Grand Lodge, La.App., 150 So. 85, 86, is referred to in this connection: "Considerations of public policy may also enter into the interpretation of the term 'dependent.' Thus it has been held that it does not include one who knowingly occupies the relation of mistress or concubine though named in the member's certificate as bearing the relation of wife and although he may have supported her and she depended on him for subsistence."

A guilty concubine is one thing and the innocent offspring of guilty parents is another, though it must be conceded that the law as it was in the beginning, is now, and ever shall be, is without proper recognition of this distinction.

"Probably no one was ever deterred from concubinage by the consideration that his innocent offspring would be the victim of his guilt. And the only effect has been, that the guilty parents have eaten the grapes, while the innocent children's teeth, with tears in their eyes, have been set on edge." Dupre v. Caruthers, et al., 6 La.Ann. 156, 158.

In its laudable effort to suppress bastardy as an evil, which, if unchecked, might destroy the family relation and, perhaps, civilization itself, it lays its heavy hand upon the unoffending victim of the illicit relationship, which it denominates as a bastard, the very word a reproach. Society with equal injustice has added ostracism and opprobrium.

The Bible tells us that an Angel of the Lord appeared to Hagar just before the birth of Ishmael, her adulterous bastard son, and said to her that her son would "be a wild man; his hand will be against every man, and every man's hand against him; and he shall dwell in the presence of all his brethren." Abraham, the eighty-six year old father of Ishmael, was chosen as the perfect man and a covenant made with him. It will thus be seen that there is a public policy which punishes the illegitimate with severe legal disabilities as illustrated in the articles of our Civil Code, which we quoted, and the attitude of society to which we have referred, but it does not quite go to the extent of deprivation of all civil rights.

The question we are now considering is whether Rozine Haydel is a relative by blood of her deceased father within the fourth degree. That she is actually a blood relative of her father, "bone of his bone and flesh of his flesh," is a conclusion which leaps to the eye, and this court has so held unequivocally in Byard v. District Grand Household of Ruth, No. 26, Grand United Order of Odd Fellows, 161 So. 787, 788. In that case we quoted the following from Stahl v. Grand Lodge, A. O. U. W., 44 Tex. Civ.App. 203, 98 S.W. 643, a decision by the Court of Civil Appeals of Texas:

"The evidence conclusively showed that Catherine Saurer was the daughter of Louis Stahl, and it follows that, being his daughter, she was related to him by blood, and was clearly within the intent and meaning of the section above copied, whether she was the legitimate or illegitimate child of Louis Stahl. No valid reason can be assigned for excluding an illegitimate child from the benefits of such an association as that of appellant, in the absence of a provision in the constitution or by-laws excluding such child. Although the child may have been the offspring of illicit intercourse, she was the blood relation of Louis Stahl, and the moral duty devolved on him to support and maintain her. In so providing for her there was nothing done that was contrary to public policy, but the act was one to be encouraged and commended. The child was not a party to the crime, and the fact of her illegitimacy, if it existed, did not destroy her relationship to her father, nor place her without the pale of the benefit of being a relative or dependent. She was both at the time she was designated as a beneficiary, and as either she could claim the benefit of the designation. The certificate was not tainted with evil in the hands of the child, and no principle of public policy can arise that would prevent her from

receiving the benefit of the insurance made by her father in her behalf."

We pointed out in the Byard Case that it had been held in Lavigne v. Ligue des Patrioves, 178 Mass. 25, 59 N.E. 674, 54 L.R.A. 814, 86 Am.St.Rep. 460, that an illegitimate child did not come within the meaning of the word " 'relative' as used in a state statute (of Massachusetts) designating permissible beneficiaries under a policy of fraternal insurance, but the statute did not say, 'blood relatives.' "

Being of the opinion that Rozine Haydel was a blood relative of her deceased father and, therefore, within one of the permissive classes as beneficiary of the mortuary benefit fund certificate, it is unnecessary to consider whether she is embraced within another permissive class as a dependent of her father. It follows that there is no need of determining the issue provoked by the conflicting claims of the wife and brother of deceased.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

McCALEB and JANVIER, Judges (concurring).

We agree that the judgment of the district court should be affirmed. However, it is our view that this conclusion can be reached solely on the ground that Rozine Haydel was actually dependent upon the insured for support and maintenance.

■ The opinion of our associate is founded upon the conviction that an adulterous bastard is a relative by blood within the meaning of section 6 of Act No. 256 of 1912. While it is true that, as a matter of fact, a bastard is related by blood to his parents, it does not follow from this that he can obtain legal sanction of his relationship. In determining whether such a child is a relative by blood within the meaning of the statute, the question must be considered in connection with the articles of the Civil Code dealing with adulterous bastards, which define their status under the laws of this state. The conclusion reached by our colleague is, in our opinion, in discord with the plain intention contemplated by Act No. 256 of 1912 and entirely overlooks article 238 of the Civil Code, which provides: "Illegitimate children, generally speaking, *belong to no family, and have no relations;* accordingly they are not submitted to the paternal authority, even when they have been legally acknowledged." (Italics ours.)

The foregoing article sets forth the policy of our law in maintenance of the morality of society and it has been said that the enactments restricting the rights of illegitimate children were made, not for the purpose of punishing the offspring of those contravening the rules of morality, "but to raise a warning barrier before the transgressor, prior to the act, of the consequences of his conduct; in other words, like all other penal laws, they seek to prevent rather than avenge." See Minor v. Young, 149 La. 583, 89 So. 757.

■ Act No. 256 of 1912 provides for the establishment of fraternal benefit societies. By section 6 thereof, the insured member of the society is permitted to designate certain persons who are therein declared to be eligible to receive the avails of the insurance. It therefore follows that the act, in allowing certain beneficiaries to be named (provided they fall within the class enumerated), prohibits the society member from conferring rights in favor of any person not specifically included. Hence the statute should be regarded as a restrictive one because, in the absence of such an enactment, the insured would have the right to designate that the proceeds of the insurance be paid to any one he might see fit to name. See Sizeler v. Sizeler, 170 La. 128, 127 So. 388.

The statute under consideration confines the payment of the benefits to the member's "wife, husband, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the member." Section 6.

■ We feel that the phrase "relative by blood to the fourth degree," as set forth in the act, is clear and is used for the sole purpose of distinguishing such kin from those persons who are related by affinity to the member. This deduction is fortified by the fact that all other permissible beneficiaries enumerated are those who are related to the member by affinity, or his legally adopted children or other persons dependent upon him for support.

■ We cannot believe that, when these restrictive clauses were placed in the statute, the Legislature was unmindful of the organic law of our state respecting adulterous and incestuous bastards. It is like-

wise inconceivable that it was the intent of the lawmaker to legalize the relationship between the member and his illicit offspring, for it must be borne in mind that bastards, under our law, are related to no one. It is true that the Civil Code does reserve to the bastard the right to demand support and maintenance from his parents. See articles 241 and 920. But these provisions do not afford him the right to claim membership in the family and were obviously enacted for the purpose of preventing him from becoming a charge upon the state.

■ Our associate bases the view adopted by him on the authority of Byard v. District Grand Household of Ruth, No. 26, Grand United Order of Odd Fellows, 161 So. 787, decided by this court. We have carefully considered the reasoning in that case and are convinced that it is unsound. There, our holding was based upon an approval of the decision in Stahl v. Grand Lodge, 44 Tex.Civ.App. 203, 98 S.W. 643, in which the constitution of the order permitted the insured to designate one or more members of his family or some one related to him by blood or those dependent upon him. The court found that the illegitimate daughter of the member could recover either on the ground that she was a relative by blood or that she was dependent upon her father. In coinciding with the reasoning of the Texas Court of Civil Appeals, we refused to follow the contrary view taken by the Massachusetts court in Lavigne v. Ligue des Patriotes, 178 Mass. 25, 59 N.E. 674, 54 L.R.A. 814, 86 Am.St.Rep. 460, where it was held that the illegitimate child did not come within the meaning of the word "relatives" as used in a state statute designating permissible beneficiaries under a policy of fraternal insurance. We sought to distinguish the Lavigne Case from the Stahl Case on the ground that, in the former, the statute used the word "relatives" whereas in the latter the constitution of the order contained the phrase "related to him by blood." The effect of our holding was that the phrase "relative by blood" is broader in its scope than the word "relatives." A careful analysis of our ruling demonstrates that the attempted distinction between the word "relatives" and the phrase "relatives by blood" is untenable, for it is now apparent to us that the word "relatives" embraces a much larger class of persons than does the phrase "relatives by blood." Where the statute allows "relatives" to be designated, the limitation includes all relations of the member whether they be his

kin by blood or affinity. Whereas, the phrase "blood relatives to the fourth degree," as used in our statute, plainly qualifies and limits the designation by the member to persons related to the member by blood and not by marriage. That it was the clear intention of the Legislature to thus restrict the designation of beneficiaries under Act No. 256 of 1912 is evidenced by the fact that certain relations by affinity, such as husband, wife, father-in-law, mother-in-law, etc., are specifically enumerated therein as permissible beneficiaries.

■ Being of the opinion that Rozine Haydel is not a relative by blood of the deceased member as contemplated by Act No. 256 of 1912, we next consider whether she was dependent upon him for support. Counsel for the surviving wife contends that the word "dependent" as used in the statute means only a person legally dependent, and that it is not enough to show that the beneficiary was actually dependent upon the insured for support and maintenance. But we do not so interpret the statute. The sole legal dependents under our law, so far as we are advised, are a person's ascendants and descendants. These legal dependents are specifically enumerated in the statute as permissible beneficiaries because they are "relative[s] by blood to the fourth degree." It follows that, if the legal dependents had already been nominated as permissible beneficiaries by the act, there would be no reason for the statute (if it had not been the intention of the Legislature to allow actual dependents to be named) to provide that the member might also designate as beneficiary "a person or persons dependent upon the member." This latter clause has the effect of giving the member of the society the right to name as beneficiary any person actually dependent upon him (either because of his minority or because of his physical or mental incapability of self-maintenance), and it is not essential that such person be related to the insured by blood or marriage.

Counsel for the surviving wife also tells us that this statute should be interpreted in the same light as the Workmen's Compensation Act, Act No. 20 of 1914, as amended by Act No. 85 of 1926, § 8, subsec. 2, p. 116, which grants certain rights "to the legal dependents of the employee." In Beard v. Rickert Rice Mills, 185 La. 55, 168 So. 492, the Supreme Court held that an illegitimate child could not be classed as a legal dependent within the meaning of the above-quoted

·clause. But the clause in the Compensation Act refers exclusively to the legal dependents of the employee wholly dependent up-·on the latter's earnings for support, whereas the clause in the act now under consideration permits the designation of persons dependent upon the member. The absence of the word "legally" as a qualification of the word "dependent" evidences an· intention of the legislature to permit the designation of all those persons "actually," although not "legally," dependent upon the member. We also consider, in this connection, the case of Farmers' Mercantile Co. v. Guillory, 149 La. 858, 90 So. 222, where the Supreme Court had before it the question of whether the father· of adulterous children could claim a homestead exemption on the theory that he had a family dependent ·upon him for support. The court held that, in view of article 920 of the Civil Code, providing that the father owes alimony to his adulterous children, there is a legal obliga-·tion in favor of these children for· support. It is difficult for us to reconcile the hold-·ing of the court in the Guillory Case with the conclusion reached in the later case of Beard v. Rickert Rice Mills. Be this as it ·may, in the case at bar it is unnecessary for us to resolve whether a difference exists between the rulings of the Supreme Court ·in the cited cases for, as we are of the opin-·ion that the statute before us permits the member to designate as beneficiaries all persons actually dependent upon him for support, it is immaterial whether Rozine Haydel is or is not a legal dependent.

■ Counsel for the surviving wife further asserts that, since Haydel, in his benefit certificate, designated his adulterous child as his "daughter" and did not denote her as his "dependent," she should be permitted to recover only in the capacity in which she was named, and that, since she has not that status—"daughter"—she should not be permitted 'to recover at all. This postulation is untenable, for the reason that it is well settled that, when a life policy is made payable to a beneficiary designated by name, the addition of the descriptive words, such as "wife" or "daughter," may be disregarded as surplusage and the proceeds paid to the named beneficiary, even though she not truly be the insured's wife or daughter. See Vance on Insurance (2d Ed.) 800; 7 Cooley's Briefs on Insurance (2d Ed.) 6352 et seq.

■ It is also maintained that to sanction recovery by a bastard child would be against the public policy of this state. On this point, the cases of Wright v. District Grand Lodge No. 21, La.App., 150 So. 85, and Succession of Stevenson, 158 So. 33, decided by the Court of Appeal for the First Circuit, are cited. In those cases, it was held that it is against public policy for a fraternal society member to designate his concubine as beneficiary of an insurance certificate. Aside from any distinction between the legal status of a concubine and an adulterous child (which might be plausibly urged), we find that the decisions of our brethren of the First Circuit are in conflict with the ruling of the Supreme Court in Sizeler v. Sizeler, supra, where it was held that the insured has the legal right to name his concubine as beneficiary in a policy of insurance on his life.

■ The surviving wife finally claims that the evidence is insufficient to show that Rozine Haydel was dependent upon the insured for support. This contention is without foundation because the proof submitted on behalf of the child is to the effect that she was not only living with, but was being supported by, her father at the time of his. death.

For the foregoing reasons, we respectfully concur in the result reached in this case.