In the Matter of ANONYMOUS.

Surrogate's Court, Monroe County, December 8, 1941.

*Arthur E. Rosenberg,* for the petitioner.

FEELY, S. An unmarried, adult mother caused the records of the birth of her illegitimate child to be made in a surname different from her own. She has since maintained her child in a boarding home for three and a half years. She now petitions for an order *ex parte* allowing her to adopt her child, on the ground that she desires to give it her own name, and a better status, and to forestall any claim she had abandoned it. Under the statute (Dom. Rel. Law, § 110), " an adult unmarried person * * * may adopt another person." Can the natural mother, under this statute, legally adopt her own illegitimate child?

Adoption appears to be the only course open to her to promote fully the welfare of her child. For some purposes she does not need to adopt. Without an adoption, she alone has the right to the custody of her child; and rights of inheritance exist between them. The natural father has no rights whatever. As for the rest, if this mother were to apply to the County Court for an order to change the name of her child, she would be required by the statute (Civ. Rights Law, § 62) to describe herself as the parent; and to justify her omission to notify " the father; " and thus the fact of illegitimacy would be made manifest. The order would

have to be published in a newspaper. Such procedure would leave the child more embarrassed than ever by illegitimacy.

The legality of the proposed adoption under the New York statute has never been passed upon in so far as this court has been able to ascertain from the reported cases. In the amendment of article VII (§§ 109–118) of the Domestic Relations Law in 1938 (Laws of 1938, chap. 606) the Legislature substituted the broader term " person " for " child," in order to make the present provision read that " no *person* shall hereafter be adopted except in pursuance of this article." It is also significant that the note of the Commission accompanying the amendment of 1938 stated to the Legislature that " the reference to the adoption of a grandchild by its grandparent is omitted as unnecessary." This omission, and the substitution of " person " for " child," indicate an intention to give the present act a broad scope, and suggest the act should be liberally construed in so far as the welfare of the child and the community is concerned, provided the requirements of the law be substantially complied with.

" It cannot be stated as a general proposition that the adoption of a blood relative is contrary to the policy of the law." (1 Am. Jur. p. 628.) In some jurisdictions it has not been permissible as a general rule for a person to adopt his own legitimate children; because it was not necessary, and it tended to impute illegitimacy to the child. In some States the adoption of blood relatives has been prohibited only within the third degree, or some other prescribed class. Some jurisdictions recognize as exceptional the case of dissolution of marriage, which is covered in our statutory provisions for legitimation by the decree of divorce or annulment.

The illegitimate child stands in a somewhat different position. A definite legal status is recognized to exist between the child and its mother. In one jurisdiction a special enactment was thought necessary to enable a natural father to adopt his illegitimate child; but elsewhere and in States where the rule of strict construction has not been followed, or has been replaced by the prevailing modern rule to construe liberally the right of either natural parent to adopt their illegitimate child is restricted only by the public policy that prohibits legal recognition of the progeny of illegal or void unions. For example, citing the case of *Hodges' Heirs* v. *Kell* (125 La. 87; 51 So. 77), 2 C. J. S. (p. 381) states that " Under a statutory provision that any person may adopt another as his child except those illegitimate children whom the law prohibits him from acknowledging, and under a further statutory provision that a natural father or mother shall have power to legitimate his or her natural children only when they are offspring

of persons who at the time of conception could have contracted marriage, it has been held that a father might adopt his illegitimate child if at the time of its conception he could have legally contracted marriage with its mother, notwithstanding at the time of adoption such a marriage would have been illegal." No such prohibitions or restrictions appear in our adoption statute. In this connection one might say that the public policy of this State has gone far in the opposite direction inasmuch as our elaborate provisions favoring the legitimation of the children of void or voidable marriages, permit a court, annulling a marriage on the ground of idiocy or lunacy of both parents, to adjudge that a child of the marriage is the legitimate child of both parents; and a like provision is made where the ground is force, fraud or duress. Legitimation, however, is not necessarily synonymous with the term adoption, but the analogy is helpful.

Our present adoption statute is general in its scope. It does not carry any special provisions; that is to say, the withdrawal of the proposed grandchild provision above mentioned indicates there was to be no restriction as to the adopting of blood relatives; nor was there to be any ground given to infer that special enabling provisions were necessary for any such adoption. It is true the substitution of " person " for " child " in our statute was intended to harmonize the law with the recent extension of the right of adoption so as to include adults. This was not a restriction, but an enlargement of the statutory right, because the word " adult " was not used for the purpose, but the word " person " replaced the phrase " person of the age of twenty-one years and upwards, or a minor." The statute also defines the term " foster child " as meaning " a person adopted," unless a different interpretation is manifestly required. A broader term than " person " could hardly have been chosen. It takes in any human being, whether a relative by blood or a stranger, regardless of age.

My conclusion is that our present statute was intended to be a general one, to be construed so as to promote the welfare of the child and the community; and that it is broad enough to permit the unmarried mother of an illegitimate child to adopt the child, provided an investigation shows her to be a fit and proper person for the purpose.