(34 South. 767.)

No. 14,705.

## Succession of VANCE et al.*

(April 27, 1903.)

DONATION CAUSA MORTIS—NATURAL CHILDREN—BASTARDS—RIGHT TO INHERIT—ACKNOWLEDGMENT—EVIDENCE.

1. The capacity to take under a donation *mortis causa* must be adjudged of at the time of the opening of the succession of the testator, which means at the time of his death.

2. The law denominates as "natural children" illegitimate children who have been acknowledged by their father; illegitimate children not acknowledged by their father, or whose parents were incapable of contracting marriage at the time of conception, are called bastards.

3. So far as inheritance established by law is concerned, bastards are barred, the law allowing them nothing more than mere alimony. And they have no greater capacity to take under dispositions *mortis causa.*

4. A mere reference by a man one time, in casual conversation, to a child as his is not that proof of acknowledgment which makes him or her what the law describes as a natural child.

5. If calling a child his offspring be relied on to establish legal acknowledgment (supposing it permissible for a father to acknowledge a child that way), the proof should be that the father was in the habit of so calling the child when speaking of it, or did so in habitual conversation with others.

Nicholls, C. J., and Breaux, J., dissenting.

(Syllabus by the Court.)

---

*Rehearing denied June 24, 1903.

Appeal from Second Judicial District Court, Parish of Bossier; John Thomas Watkins, Judge.

In the matter of the succession of J. P. Vance. Application to probate last will and testament. S. F. Vance and others, opponents. From the judgment striking a certain bequest from the will as illegal, Eliza James, legatee, appeals. Affirmed.

Murff & Webb, for appellant. Thomas T. Land, for appellee executor. Joannes Smith and Solomon Wolff, for appellees opponents.

BLANCHARD, J. J. P. Vance died in May 1902 and in September following Dr. Thos. J. Vance presented for probate the last will and testament of the deceased, olographic in form, the body of which is as follows:—

"I do hereby make this my last will. I give to Dr. Tom Vance my Plain Daling property. I want Eliza James to have the remainder of my real estate and to hold absolutely. I appoint Dr. Tom Vance my sole executor of my will."

The petition for probate represented that the deceased died without forced heirs and that the petitioner and others mentioned are his brothers and sisters and nephew.

The prayer was that the will be probated and ordered executed according to law, and that the petitioner be confirmed as executor.

The parties named as brothers and sisters and nephew of the deceased (all save Dr. Vance) filed an opposition, alleging their collateral heirship and opposing the bequest made to Eliza James.

They averred her to be a free woman of color, the bastard daughter of the deceased, born of a colored mother in the year 1862, and as such incapable of receiving anything from the deceased by donation *mortis causa.*

They prayed that that part of the will bequeathing property to her be declared of no effect and set aside, and that the opponents, with Dr. Vance, be recognized as the legal heirs of the deceased and as such entitled to his estate, save that part specially bequeathed to Dr. Vance.

The judgment of the District Court sustained this opposition. There was stricken from the will, as illegal and void, the bequest made to Eliza James. In all other respects the will was recognized and ordered executed, Dr. Vance to take the property bequeathed to him and the remainder of the estate to go to the heirs at law.

Eliza James appeals.

*Ruling*—The testator was never married. He lived and died a bachelor. His parents had died years before. There were no forced heirs. His collateral heirs are all non-residents of the State, save Dr. Vance.

Eliza James was his child, born in 1861 or 1862, of a colored mother.

This is shown to our satisfaction, as it was to the satisfaction of the trial judge.

As to this, a white man, R. E. Lee, 49 years of age, testified he had known the deceased since 1867; was at and around his place a good deal, a friend of his, and often in his company; was acquainted with Eliza James, who is the wife of Turner James; that in the winter of 1894 or 1895 he was stopping at Vance's house, engaged in the work of putting up some machinery on his plantation, and occupied the same room with Vance; that on that occasion Vance spoke of his being alone, lamenting he had no family, and declared he blamed the doctors for it; said the doctors had advised him, on account of a disease he had contracted in early life, never to marry because his children would be afflicted. Continuing, Vance said to him he knew now the doctors did not know what they were talking about, that his children were not afflicted, "for there is Turner's wife as healthy as anybody."

By "Turner's wife" he meant the wife of Turner James, who is mentioned in the will as Eliza James.

Lee further testified that Vance was ill at the time and he sat up with him most of the night. He said that Vance had never spoken to him of those matters prior to that night; that while he referred to it afterwards, he never made a regular statement; and that in speaking of his children he called no names —referring merely to Turner's wife. He (Lee) did not know to whom else he referred, and he did not know whether or not Turner's wife had brothers or sisters.

Doles, Keith and Cavitt, well known citizens of the parish in which Vance lived, who had known him for many years and were near neighbors of his, testified that Eliza James was generally understood and reputed.

to be the daughter of Vance; that this was spoken of in the neighborhood for years. And Doles testified that before Eliza married Turner James, he had heard her called by the colored people in the neighborhood Eliza Vance.

This evidence, taken in connection with the fact that Vance left the bulk of his estate to her, produces the conviction that Eliza was the daughter of Vance.

There was no countervailing testimony suffered to rebut this. Eliza did not, herself, take the stand. This is a significant circumstance. She must have known from declarations of her mother, Jane Smith, who her father was. Jane was dead at the time of the trial, but we gather from the testimony that she had lived until Eliza was a grown woman. So, too, was it likely that Eliza knew from Vance he was her father, if such were the fact. It is shown that she waited on him in his illness. His will was executed only about five or six months prior to his death.

Eliza must have had some knowledge derived from authoritative sources of her paternal descent, and her silence on this the crucial question of her case makes against her.

Being shown to be the child of the testator by an illicit union, what is the legal situation of this legatee with regard to her capacity to take under the will?

She was the offspring of parents incapable of contracting marriage at the time of her conception and birth. True, the legal barrier to marriage was subsequently removed and remained down for years, but during that period no marriage of the parents took place and no acknowledgment of the child was made.

Subsequently the law reimposed the barrier to marriage between white people and colored people, so that at the time of the confection of the will of Vance and at the time of his death, no marriage could have taken place between himself and the mother of the legatee, had she been living.

But these circumstances may well be waived in this discussion in view of the conclusion arrived at.

The capacity to take under a donation *mortis causa* must be judged of at the time of the opening of the succession of the testator, which means at the time of his death. Civ. Code, art. 1473; Succession of Hardesty, 22 La. Ann. 332.

The law denominates as "natural children" illegitimate children who have been acknowledged by their father; illegitimate children not acknowledged by their father, or whose parents were incapable of contracting marriage at the time of conception, are called bastards. Civ. Code, art. 202.

So far as inheritance established by law is concerned, bastards are barred, the law allowing them nothing more than a mere alimony. Civ. Code, art. 920.

Then, if we turn to that part of the Code treating of the capacity to receive through donations *mortis causa*, we find that when the natural father had not left legitimate children, or descendants, the natural child or children acknowledged by him may take as much as one fourth of his property, if he leave legitimate ascendants, or legitimate brothers or sisters, or descendants of such, and as much as one third if he leave only more remote collateral relations. Civ. Code, art. 1486.

In the case at bar Vance left legitimate brothers and sisters and a legitimate nephew, so that Eliza James, even if she had the *status* of a natural child—*i. e* one acknowledged by him—could take under the disposition made in her favor only to the extent of one fourth of the estate, whereas he bequeathed nearly the whole of the estate to her.

Since she could take only to the limited extent mentioned, supposing her to have the *status* and rights of a natural child, duly acknowledged, what, if anything can she take, supposing her to be merely a bastard, or unacknowledged child?

No provision appears to be made by the law for the bastard to take anything by donation *mortis causa*. Surely, the bastard cannot take as much as the natural or acknowledged child, and as to the latter, as seen, severe restrictions upon the capacity to take are prescribed.

By its silence, then, the law must be presumed to have intended the bastard to take nothing, or at least to have no greater rights under dispositions *mortis causa* than are accorded such a child by the articles of the Code relating to inheritance properly so

called, and these, as we have seen, are limited to a mere alimony.

Were it otherwise, and because the law is silent in this respect, the anomaly would be presented of the unacknowledged child, or bastard, taking more than the acknowledged, or natural child.

If then Eliza James be accorded the *status* of a natural child the result would be she would take under the will of Vance, not to the extent of the bequest made to her, but to the extent only of one-fourth of his estate. The disposition in her favor would be reduced to that.

If she be found not to have the *status* of an acknowledged child, but that only of a bastard, she could not take under the will at all.

It becomes, then, necessary to inquire what was her *status* at the time of the death of Vance.

We have seen that she was his illegitimate child and a synopsis of the evidence adduced supporting this has been given.

The statement made to the witness Lee, in which he referred to Eliza James as his daughter, taken in connection with the proof of reputed paternity and with the motive actuating to the making of the disposition in her favor, is held sufficient to establish the fact that Vance was her father. Civ. Code, art. 209.

Other than the statement to Lee there is no proof whatever in the record of any acknowledgment by Vance of Eliza James as his child.

Is that statement sufficient to give her the legal status of a natural child in the sense of Civ. Code, art. 2022? Let us see.

The acknowledgment of an illegitimate child, says Civ. Code, art. 203, shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father or mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.

This is a plain, precise and seemingly mandatory provision of law, and yet there are authorities holding that the legal acknowledgment of illegitimate children may be made in other ways than by the declaration before a notary and two witnesses, which Civ. Code, art. 203 says *shall be the method.*

See Lange v. Richoux, 6 La. 560; Succession of Fortier, 51 La. Ann. 1585, 1586, 26 South. 554; Bourriaque v. Charles, 107 La. 217, 31 South. 757.

These decisions and other of like tenor seem to rest mainly upon articles 208 and 209 of the Code, both of which refer to proof of paternal descent rather than to paternal acknowledgment. Thus article 208 says, illegitimate children *who have not been legally acknowledged* may be allowed to prove their paternal descent, and article 209 says, in the case where the proof of paternal descent is authorized by the preceding article, the proof may be made (1) by all kinds of private writing; (2) when the father, either in public or private, had acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such; (3) when the mother of the child was known as living in a state of concubinage with the father and resided, as such, in his house at the time when the child was conceived.

These are directions, it will be seen, for proving paternal descent, which is not the same thing as the acknowledgment by the father, and it is *acknowledgment by the father* which converts the illegitimate child, or bastard, into the "natural" child, and from which spring the rights with which the natural child is invested by the law.

But though we adhere to the jurisprudence authorizing methods of acknowledgment of illegitimate children otherwise than as laid down in Civ. Code, art. 203, it is impossible to hold that what Vance said to the witness Lee, as hereinbefore set forth, suffices to invest her with the title of a legally acknowledged, or natural child.

By the very terms of Civ. Code, art. 209 it was competent evidence to prove paternal descent—this reference to the bastard in casual conversation as his child—and united with the proof of reputed paternity, suffices, as we have seen, to establish such descent. It could be taken advantage of by the brothers and sisters of Vance (opponents herein) to defeat the taking of Eliza James under the will, for Civ. Code, art. 207 expressly declares that every claim set up by natural children may be contested by those who have any interest therein.

When, therefore, Eliza James laid claim to

the greater part of the estate under the will, the collateral heirs could show that by paternal descent she was the child of the testator, born out of wedlock, and, legally, incapable of taking the estate by donation *mortis causa*. They could show this by just such statements as Lee testified to. See Robinett v. Verdun's Vendées, 14 La. 546.

But a mere reference to her in casual conversation one time as his child is not that proof of acknowledgment which makes of her what the law describes as a natural child.

If calling a child his offspring be relied on to establish legal acknowledgment, the proof should be that the father was in the habit of so calling the child when speaking of it, or did so in habitual conversation with others. The French text of the Code uses the phrase *dans ses discours*, which means more, is more comprehensive, than the English translation "has called him so in conversation." See specially on this point, Badillo v. Tio, 6 La. Ann. 130, 131.

Eliza James, then, while shown to be the illegitimate child of the testator, is not shown to have been so acknowledged by him as to be entitled to the *status* of his natural child. Not being entitled to that *status* she takes nothing under the will. Robinett v. Verdun's Vendees, 14 La. 542; Dupre v. Caruthers, 6 La. Ann. 156; Bennett v. Cane, 18 La. Ann. 590.

Judgment affirmed.

NICHOLLS, C. J., and BREAUX, J., dissent.