DAWKINS, J.
Alleging themselves to be the natural children of Rachel Clark, deceased, plaintiffs seek to recover of defendants certain real property situated ih the town of Houma, La., which belonged at her death to the said Rachel Clark.
Defendants are the transferees of Francis Young, lawful sister of the deceased, who claims to have inherited as her sole legal heir, and contest the right of plaintiffs to recover upon the ground that they were never legally acknowledged by the said Rachel Clark, so as to entitle them to inherit from her.
Tire district court gave judgment for defendants, which was, on first hearing, reversed by the Court of Appeal, and the case decided in favor of plaintiffs. On rehearing the latter court set aside its first judgment, because of the insufficiency of the evidence to show the acknowledgment of plaintiffs by deceased, and remanded the cause for further proof on this point. It was again tried in the district court, which, in conformity with the views expressed by the Court of Appeal on the question of law involved, found for the plaintiffs, and on the second appeal this latter judgment was affirmed.
The case is before us on certiorari for review.
Opinion.
Defendants claim that the Court of Appeal erred in the following particulars:
(1) In holding that the Legislature had not/the right to change the laws of inheritance.
(2) In remanding the case to the district court for the reception of further evidence.
(3) In holding that the answers to leading questions, timely objected to, were sufficient to prove acknowledgment.
(4) In substituting the law of proof of descent for the proof of acknowledgment.
(5) In applying to the case at bar the jurisprudence .with reference to acknowledgments other than as provided by the Code.
(6) In holding that the evidence was sufficient to give the plaintiffs the status of natural children.
(7) In holding that laws changing descent and distribution have no retroactive effect.
(8) In not requiring proof of acknowledgment by admissions and conversations of the mother, instead of mere evidence of descent to establish the status of natural children duly acknowledged.
(9) In holding that the law in force at the time of conception, instead of that existing at the opening of the succession, should apply.
Boiled down, the questions which we are called upon to answer, and the order in which we shall decide them, are as follows:
(1) Did the court err in remanding the case for further proof upon the question of acknowledgment, in the light of its conclusions upon the law?
(2) Conceding that it is legally permissible to prove acknowledgment, for the purpose of giving the status of natural children capable of inheriting, in any other form than those provided by article 203 of the Civil Code, is the proof, legally admitted, sufficient to sustain plaintiffs’ case?
(3) There having been no legal impediment to the marriage of plaintiffs’ father (a white man) and mother (a colored woman) at the time .of conception, did the subsequent pas *615 sage of Act No. 54 of 1894, prohibiting the marriage of blacks and whites, give the plaintiffs the status of bastards at the date of their mother’s death on September 13, 1894, after that law had gone into effect?
(4) If the evidence is sufficient to prove maternity, and the act of 1894 does not affect the case, can there be an acknowledgment, such as will give the right to inherit as a natural child, in any other manner or form than those provided in article 203 of the Code?
The Attorney General and other counsel have filed briefs as amicus curise in support of some of the contentions of defendants, in which they assert that there is another case of considerable importance to the state shortly to come before us, involving the same questions, and asking that we decide those issues adversely to the plaintiffs.
[1] Taking up the first of the four questions propounded by us, counsel for defendants have not pressed it in brief, has cited no law in support thereof, and we know of nothing which prevented the Court of Appeal from remanding the case for further proof as was done. It was but following the example of this court. Scruggs v. Endom, 123 La. 887, 49 South. 630.
[2] The evidence conclusively shows that the plaintiffs were the children of Rachel Clark, a woman of color, by a white man named Stephen Minor, for whom the mother worked during the time of their conception and birth, that they were born during the late ’70’s or early ’80’s, and that their said father died prior to the passage of the Act No. 54 of 1894, prohibiting marriage between blacks and whites. Plaintiffs lived with, was raised by, and treated by Rachel Clark as her children until the date of her death. She did not acknowledge them in any of the forms provided by article 203 of the Code, but the evidence does establish that she informally recognized and spoke of them as hers, admitting in conversation that Minor was their father. This also took place prior to the passage of the act of 1894; so that, if this form of acknowledgment be sufficient in law, there being no legal impediment at the time it took place, we can see no more reason for its effects being destroyed by the passage of the act in question thereafter than if plaintiffs had been acknowledged by notarial act, or in either of the other ways provided in article 203 of the Code. In other words, the status would already have been established, the father had died, and it could not be said that by the passage of a subsequent law merely prohibiting the future marriage of persons of different races the Legislature intended to destroy the legal relations of persons which had already become fixed. To say the least, the intention to do so would have to be plainly disclosed, and such was not done in the present case. In fact, the law does not attempt to deal with the question of inheritance or succession at all, except in so far as that result may follow from acts done in violation thereof in the future.
[3, 4] There is no inherent right in any one to succeed to the estate of a person deceased, and the rules of transmission or devolution of property in such cases are left to the wisdom of the lawmaking power of the state. 1-Iyde v. Bank, 8 Rob. 416. That body has, in large measure, sought to vest such rights in those persons and in the order most nearly comporting with the ties of blood and nature, save where, as a matter of public policy, and in aid of the moral precepts of society, it has been found necessary, for the common good, to change the order of things. The purpose of such restrictions is not to punish the offspring of those contravening these rules of morality, but to raise a warning barrier before the transgressor, prior to the act, of the consequences of his conduct; in other words, like all other penal laws, they seek to pre *617 tent rather than avenge. Accordingly our Code in declaratory terms has fixed the status of children born out of wedlock (C. C. art. 180) as “illegitimate” with no right of inheritance, except as the affirmative act of the parent or • parents may elevate them from that state to the status of legitimated or acknowledged children. C. C. arts. 198, 200, 202, and 238; Montegut v. Bacas, 42 La. Ann. 158, 7 South. 449; C. C. 921.
[5] Article 200 of the Code provides that either the father or mother may by notarial act legitimate his or her child horn out of wedlock, when there existed no legal impediment to the marriage of the parents at the moment of conception, provided the one so seeking to legitimate has no living lawful ascendants or descendants, thus clearly indicating by implication that even this highly formal method, giving to the child the greatest legal rights possible short of marriage, .was intended to cut off the rights only of more remote lawful relations, as otherwise these would be preferred to the illegitimate child unacknowledged according to law. And again article 202 defines a bastard in the following language:
“Illegitimate children who have been acknowledged by their father are called natural children; those who have not been acknowledged by their father, or whose father and mother were incapable of contracting marriage at the time of conception, or whose father is unknown, are contradistinguished by the appellation of bastards.”
But this designation or definition of bastards, in so far as rights flowing to or from the mother are concerned, is necessarily enlarged by the following article, 203, which permits the mother alone, in a proper case, to acknowledge her illegitimate child, without regard to the action of the father; for, even if he has acknowledged it, by the plain provisions of article 918 et seq. this does not give the right of inheritance from the mother who has not; yet, if the father has not acknowledged and the mother has, it may inherit from her.
[6] Article 203 reads:
“The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.”
Thus, clearly, either may acknowledge, in the forms prescribed, without the other, and article 922 provides:
“The estate of a natural child deceased without posterity, belongs to the father or mother who has acknowledged him, or in equal proportions to the father and mother, when he has been acknowledged by both of them.”
Hence, when these articles are read in connection with articles 918 and 919, prescribing the circumstances under which the illegitimate child may inherit from the mother and father respectively, it is made manifest that acknowledgment is a condition precedent to the right of inheritance by or from such child, and the right arises as to or in favor of the one alone who has so acknowledged. Therefore, in the absence of acknowledgment in one of the forms provided by law, all children born out of wedlock are, as to the parent .who has not acknowledged, bastards in the legal sense, even though there were no legal impediment at any time to the marriage of the parents. Hence it is, as above pointed out, the affirmative act of acknowledgment alone, by the parents, or either of them, which raises any illegitimate child from that status entitled to receive mere alimony to the quality of a natural or acknowledged child, with the right of inheritance.
[7] There was and is no provision in the French law corresponding to article 202 of our Code, thus classifying all illegitimate children, including those as between whose parents there was at the time of conception no legal impediment to marriage, as bastards. *619 It follows that the French Code, their jurisprudence, and the discussions of the commentators deal with questions of proof or adjective law, and not with any provision of substantive law declaratory of status, as found in article 202 of our Code. In their case the' courts are concerned merely with the character and sufficiency of the evidence of paternity or maternity, while we have to consider positive and seemingly mandatory provisions of our law, fixing: First, the status of all chidren bom out of wedlock as bastards ; and, secondly, definite forms or methods for changing that status.
“Natural filiation is the work of nature alone. Natural children are those who have not been conceived, or at least who have hot been born, in marriage. Their filiation, as that of legitimate children, is called paternal or maternal, according as one is looking toward the one or the other parents. But there exists a considerable difference between legitimate children and natural children. As to one, as we have before seen, proof of legitimate maternity necessarily entails that of legitimate maternity; but natural paternity and natural maternity are, on the contrary, entirely independent one of the other from the point of view of proof. Illegitimate maternity can be established when paternity remains an unknown fact, and inversely. From the maternity of a married woman the law presumes the paternity of her husband. In the matter of natural filiation no presumption of this kind can be made.” Baudry-Lacantinerie, treatise persons, No. 612.
“Voluntary acknowledgment is a declaration of paternity or maternity made by the father or by the mother of a natural child in the form prescribed by law. The authentic act which constitutes such acknowledgment forms the' title of a natural child. It constitutes the regular and normal mode of proof of natural filiation, just as the registry of birth constitutes the regular mode of proof of legitimate filiation. From the point of view of filiation, the act of acknowledgment is, then, for the natural child what the act of birth is for the legitimate child.” Id. 614.
“In certain cases the law admits the natural child who has not been the object of a voluntary acknowledgment to establish such fact judicially. This is what is called the research of maternity or paternity. If the child succeeds in such research — that is to say, if he obtains a judicial decision declaring that such and such a man is his natural father, or that such and such a woman is his natural mother — his filiation is considered established by judicial or forced acknowledgment. These expressions may appear singular, the word ‘acknowledgment’ seeming to imply a voluntary act on the part of the one who acknowledges, but the law authorizes such employment.
“The law, then, considers also an acknowledgment the judicial establishment of paternity or maternity, and in order to distinguish from the voluntary acknowledgment calls such the forced or judicial acknowledgment. This observation is of great importance. The judicial establishment of paternity or maternity constitutes in the eyes of the law an acknowledgment. It results from this that the texts which speak of natural children legally acknowledged are applicable to children whose filiation is judicially established, as well as to those whose filiation is established by voluntary acknowledgment.”
Id. No. 662.
Thus it is seen that, under the French law, all children born out of wedlock who are capable of acknowledgment are called natural children from their birth; while with us it is only those who have been acknowledged who are recognized as natural children; all others being designated by the appellation of bastards. With us the judicial inquiry into paternity or maternity is for the purpose of enabling the illegitimate child to demand alimony. C. C. art. 242.
“In our ancient law natural children were called bastards. Their situation was more miserable,' since they were serfs. They were absolutely excluded from the legitimate family, with the exception always of bastards and children of certain high nobility. The only right accorded to bastards was the right of alimony.
“The principles of the law of intermediate period tending to assimilation between the effects of natural and legitimate filiation became a menace to the existence of the legitimate family, the foundation of society. On the other part, it is not considered just to exclude natural children from all rights with regard to their parents and thus render them responsible for a fault which they had not committed. The Civil Code of France, therefore, takes a middle position. It accords them certain restrict *621 ed rights, but on condition of having been acknowledged by their parents of a proof of natural filiation.”
Carpentier & Du Saint, Rep. vol. 20, p. 196.
[8] We find, therefore, that under the French law, as well as the 11th law of Toro, proof of filiation and the judicial determination of that fact alone were sufficient to entitle the natural or illegitimate child to inherit (under the latter even adulterous or spurious children might inherit from the mother); and there'appears to have been no such thing as an informal verbal acknowledgment, as distinguished from proof of filiation or enforced judicial acknowledgment, under the French law, as has been held essential in the decisions of this court, such as Succession of Vanee, 110 La. 760, 34 South. 767.
Article 203 of our Code is positive, and appears to be mandatory, as to the methods of acknowledgment. Yet it isN contended by counsel for the plaintiffs, and has been so held by this court, that illegitimate children of the mother may make proof of acknowledgment in other ways. The’ basis for this contention and holding is the article 212 of the Code, and the dicta of the French courts and commentators under a different condition of the law, as above pointed out. We quote article 212:
“Illegitimate children of every description may make proof of their maternal descent, provided the mother be not a married woman.
“But the child who will make such proof shall be bound to show that he is identically the same person as the child whom the mother brought forth.”
This is but a partial perpetuation of the old rule under the 11th law of Toro, when no distinction, as above pointed out, was made between natural children and bastards with respect to the mother. However, our Code draws a very clear distinction between such children, even as to the mother, as we shall show further on. If the mere proof of filiation were sufficient to establish acknowledgment, it would seem to follow that on making such proof any illegitimate child might inherit from his mother, provided she were never married, notwithstanding it might be an incestuous or adulterous bastard (resulting from the relationship of the parents within prohibited degrees, or because of the fact that the father was at the time of conception a married man, or because of other legal impediments to the marriage), save and except in the single case .where the mother is a married woman. However, we observe that article 920 provides:
“Bastards, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the cases above mentioned [that is, under articles 918 and 919] the law allowing them nothing more than a mere alimony.”
By the cases above mentioned are meant those cases where, for the lack of relations with a greater legal right, acknowledged illegitimate children would inherit, and from1 which bastards, adulterous or incestuous children are excluded.
Then, again, article 208, succeeding closely on the heels of articles 202 and 203 of the Code, says:
“Illegitimate children who have not been legally acknowledged may be allowed to prove their paternal descent.”
And in the following articles (209, 210, and 211) the ways and cases in which this proof may be made are set forth. Then follows the article 212 with reference to the proof of maternal descent already quoted, and the natural and logical meaning and effect of arrangement, with the juxtaposition of those articles in the section 2 of chapter 3 of the Code under the heading, “Of the acknowledgment of Illegitimate Children,” seem to indicate rather clearly that, while the descriptive term “who have not been • legally acknowledged” used in article 208 with reference to proof of paternal descent was not re *623 peafed in article 212, dealing with proof of maternal descent, it was so intended and must be read into the latter article. No other interpretation seem's consistent with the purpose of the lawmaker; for it does not seem reasonable that, after declaring in positive and mandatory terms what should be done to lift the bastard, with “no relations,” without right of inheritance, to the plane of an acknowledged child, with rights superior to all others save lawful descendants, he would have, in such loose fashion, provided so simple a means of dispensing with the rigid formalities thus required, especially when the language used, if such were intended, clearly conflicts with other prohibitive provisions of the same Code as to. adulterous and incestuous bastards.
As a further illustration and proof of the limited purpose or effect of the mere proof of maternal descent under article 212, we advert to the provisions and requirements of the Code with respect to the right to claim alimony from the father or mother, or their heirs after death:
“Art. . 241. AUmony.-^Illegitimate children have the right to claim this alimony, not only from their father and mother, but even from their heirs after their death.
“Art. 242. Alimony when Demanded. — But in order that they may have a right to sue for this alimony, they must:
“1. Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or they must have teen declared to he their children hy U judgment duly pronounced, in cases in which they may he admitted to prove their paternal or maternal descent;
“2. They must prove in a satisfactory manner that they stand absolutely in need of such alimony for their support.”
In the absence of legal acknowledgment, it is made a condition precedent to the right to sue for alimony that the child should have first obtained a judgment of court, contradictorily with father or mother, or their lawful heirs, declaring him to be his or her child, and such judgment of parentage can be had in those cases alone where the proof is admissible under the articles 208 to 212, inclusive. Does, it seem reasonable that the authors of the Code would have been so solicitous of the rights of legal heirs as to require such conditions to precede the right even to sue for alimony, and at the same time have permitted not only a right of action based upon the bare allegation of informal verbal acknowledgment, but upon.the proof thereof, the recovery of the entire estate, to the exclusion of these same lawful relations, when the only authority for the admissibility of such evidence is these same provisions of the Code limiting the modes of proof in actions for alimony?
[9] The jurisprudence has vacillated somewhat on this point, and we are confronted with the duty of either perpetuating what seems to be a misinterpretation of the law by reaffirming those decisions holding that acknowledgment may be made by informal verbal declaration of the mother, or of following what we conceive to be the plain requirements of the Code and the few cases coinciding with our present views.
It is argued, of course, that the interpretations of these provisions of the law have established a rule of property, and the views formerly announced should not be changed to the prejudice of those claiming in accordance therewith. However, there is, as heretofore pointed out, no vested right of inheritance in any one, and either the Legislature, by enactment, or this court, by interpretation, may declare the law to be what the former thinks best, and what the latter deems most in accordance with correct legal principles, without doing violence to any claims which may arise in the future. Hughes v. Murdock, 45 La. Ann. 935, 13 South. 182; Waugh v. Riley, 68 Ind. 482.
[10] We can see no useful purpose in reviewing the past conflicting jurisprudence, *625 which admittedly exists; that speaks for itself. Neither c¿n we find any basis for that part of the jurisprudence which has distinguished between the proof of filiation and informal verbal acknowledgment. No such distinction existed in either the Spanish or French law or jurisprudence which form the foundation for those decisions of this court. The French law simply made the judgment of court under the research of parentage or proof of, filiation the same as the formal acknowledgment, and we find no reference to informal verbal acknowledgment except as such may have formed a part of the proof of filiation. However, the decisions to which we refer seem to have introduced into our law this species of acknowledgment. Badillo v. Tio, 6 La. Ann. 130; Succession of Vance, 110 La. 760, 34 South. 767; Succession of Gravier, 125 La. 733, 51 South. 704. This doctrine probably arose from the fact that article 209 with respect to the father, provides that proof of paternal descent may be made by all kinds of writings, the public or private declarations of the father, or when the mother of the child has resided in the house of the father as his concubine. But these declarations are merely a species of proof in the establishment of paternal descent permitted on the part of “illegitimate children who have not been legally acknowledged * * *” (article 208), and it is nowhere provided in the Code that such declarations within themselves constitute an acknowledgment as distinguished from proof of filiation. And it appears as significant to us that, while there is an express provision for the judicial establishment of parentage to enable the illegitimate child to demand alimony (article 242), as hereinabove shown, there is no provision for any such proceeding to establish “enforced” acknowledgment or the right to inherit.
In conclusion we reiterate that we think the fundamental error running through the decisions holding contrary to the views herein announced has been the failure to observe the difference between our codal provisions, classifying all illegitimate unacknowledged children as bastards, or without right of inheritance, and the French law, which, on the contrary, recognized all such as natural children, and merely postponed the right to inherit until filiation had been judicially established.
For the reasons assigned, the judgments of the district court and Court of Appeal are annulled and set aside, and it is now ordered, adjudged, and decreed that the demands of plaintiffs be rejected at their cost.
PROVOSTY, X, dissents.
O’NIELL, X, concurs in the decree.
PER CURIAM. Rehearing granted.
MONROE, C. X, and PROVOSTY and DAWKINS, JX
All of the issues in this cause having been compromised and settled between the parties, and all of the parties hereto having joined in the request as to the former judgment of this court, rendered on the 3d day of November, 1920, decreeing the defendants and applicants to be the owner of the property in dispute, all as is more fully shown by the joint application of all of the plaintiffs and the defendants, it is therefore ordered, adjudged, and decreed -that the for-' mer judgment of this court rehdered on the 3d day of November, 1920, be, and the same is hereby, reinstated and made final, and the defendants and applicants are decreed to be the owners of the property involved in this litigation, and the' costs are ordered paid by defendants, all in accordance with the consent of the parties on file.