O’NIELL, J.
(dissenting). The judgment rendered by the majority members of the court in this case will, if adhered to, put an end to the claims of the state of Louisiana and of George West. Though they were not parties to the proceedings in the district court, in which Lillie G. Taylor was recognized as owner and ordered sent into possession of the property occupied by George West as owner, the state of Louisiana and George West became parties to the proceedings when they appealed from the ex parte order or judgment recognizing Lillie G. Taylor to be the owner of the property and entitled to possession thereof. That judgment, in favor of Lillie G. Taylor, is now affirmed by the judgment and decree rendered by the majority members of this court, on the appeal of the state and of George West. In fact, the judgment rendered against the appellants virtually declares that neither of them had an interest in prosecuting an appeal from the ex parte judgment that had been rendered in favor of Lillie G. Taylor.
This court had already decided in this case, in a judgment that was rendered six months ago, and that is now final, that the state of Louisiana and George West did each have an interest in prosecuting this appeal, and that they, therefore, had a right to appeal. I refer to our decree overruling the motions to dismiss the appeal of the state and of George West. The contention of Lillie G. Taylor was that the state and George West had no interest in appealing and therefore had no right of appeal. We held otherwise, Mr. Justice PROVOSTY alone dissenting. The learned justice, very lately, almost simultaneously with the submission of his opinion on the merits of this case, filed a dissenting opinion, giving his reasons for saying that the state and George West had no right of appeal. That opinion appears to me to be the basis of the opinion written by the same justice, maintaining that the appellants had no interest in demanding that the case should be remanded to have the evidence reduced to writing.
It appears to me, therefore, that the majority opinion and decree now rendered on the merits of this ease overrules our opinion *113 and decree in which we decided that the state and George West did have a right of appeal in this case. Not only has that decree been final for six months, but it has also been affirmed in another case, in which, also, the opinion has become final and has been officially published. I refer to Succession of Henry Dickson, 148 La. 501, 87 South. 251, in which we held that third parties had a right to appeal from an ex parte order or judgment ordering an illegitimate child sent into possession of the estate of her deceased father, and in which we cited with approval our decision in the present case, overruling the motions to dismiss the appeal of the state and of George West.
Although the two decisions referred to ^re, in effect, overruled by the majority opinion and decree now rendered in the present suit, they are not referred to as being overruled. The opinion rendered in Succession of Henry Dickson, supra, was unanimous. The opinion and decree rendered in the present case, declaring that the state and George West did each have a right of appeal, is final. These decisions, therefore, in my opinion, should not be overruled.
I assume that the granting of a rehearing in the case of Minor v. Young, 148 La. 610, 87 South. 472, was the result of the dissent of Mr. Justice Provosty, who handed down a very lengthy dissenting opinion in that case. 89 South. 762.[1] That case, on its merits, presented identically the same question that is decided in this case. All of the attorneys in this case appeared as amici curite in the case of Minor v. Young, and filed briefs which were afterwards copied as the briefs in this case. It was therefore recognized by the court and by counsel for all parties that a decision of either case upon its merits would, in effect, decide both cases. For that reason, I shall undertake to analyze and answer the dissenting opinion in Minor v. Young, as being the basis of the majority opinion now rendered in the present case. I deem that to be my duty because, inasmuch as the majority opinion in the present case is precisely the reverse of the majority, opinion rendered in Minor v. Young, 148 La. 610, 87 South. 472 ; 89 South. 762,[1] the members of the legal profession will be bound to assume that the dissenting opinion in Minor v. Young has been adopted as the majority opinion in the present case.
It is said in the majority opinion on the merits of this case:
“As Angeline Allen, mother of Lona McGee, was the person ‘who would have inherited in default of natural children,’ i. e., in default of Lillie G. Taylor, if she had acknowledged Lona McGee, she was cited.”
It is not • pretended that Angeline Allen acknowledged Lona McGee to be her child, except verbally and informally, just as Lona McGee acknowledged Lillie G. Taylor to be her child. Therefore Angeline Allen could not have inherited from her daughter, Lona McGee, in any event. This court is yet unanimous in the opinion that a parent cannot inherit from his or her illegitimate child, unless the parent has acknowledged the illegitimate child either by an authentic act or in the registry of birth or baptism. To that extent, Mr. Justice Provosty concurred in the decision in Succession of Lacosst, 142 La. 674, 77 South. 497, viz.:
“Provosty, J., concurs on the ground that, while the child may prove acknowledgment in a mode other than either of those expressly provided for by the Code, the mother may not.”
That distinction seems strange to me, not only because no such distinction is made in the Code, but also because a surviving father, desiring to inherit from his deceased illegitimate child, could obviate the ruling by making the formal acknowledgment required by the Code, after the death of the *115 child. Be that as it may, the distinction was made by Mr. Justice Provosty in his concurring opinion in Succession of Lacosst, and the latter decision was expressly affirmed in a subsequent opinion written by Mr. Justice Provosty and concurred in unanimously in Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 South. 894. The opinion in the latter case is so short and to the point that I quote it in full, viz.:
“Provosty, J. Plaintiffs sue under the Employers’ Liability Act (Laws 1914, p. 44) in damages as heirs of their child who was killed in the course of his employment at defendant’s sawmill. The defense is that the child was illegitimate, and had never been acknowledged by either of the plaintiffs. Article 203, C. C., provides:
“ ‘The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.’
“Defendant contends that the modes of acknowledgment here specified are exclusive; and plaintiff contends that they are not, but that a baptism of the child in the presence of the parents as their) child, and a declaration by the parents to the federal census taker of their parentage of the child, is the equivalent of a ‘registering of the birth or baptism’ of the child. For so holding this court would have, not to interpret, but to amend, the said article by recognizing an additional mode of acknowledgment.
“It is not contended that the decisions in the cases of Lange v. Richoux, 6 La. 560, Succession of Fortier, 51 La. Ann. 1585, 26 South. 554, Bourriaque v. Charles, 107 La. 217, 31 South. 757, Succession of Vance, 110 La. 760, 34 South. 767, Briggs v. McLaughlin, 134 La. 133, 63 South. 851, and Jobert v. Pitot, 4 La. Ann. 305, recognizing the right of a child to prove acknowledgment otherwise than by the modes prescribed by said article 203 have any application to the ease. The controlling decision is Succession of Lacosst, 142 La. 674, 77 South. 497, to the effect that a parent has not this right.”
The majority opinion in the present case does not overrule — and it is quite certain that we will never overrule — these two recent decisions holding that a surviving parent who has not formally acknowledged his or her deceased illegitimate child in one of the methods required by article 203 of the Civil Code cannot inherit from the child, viz.: Succession of Lacosst, 142 La. 674, 77 South. 497, and Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 South. 894. The majority opinion in the present case, in effect, undertakes to reconcile with these two recent decisions, the early decisions maintaining that a bastard child can inherit from his or her deceased parent, by proving paternity or maternity, as the case may be; that is, by proving merely that the child is the illegitimate child of the deceased person, and without proving an acknowledgment in any one of the forms required by article 203 of the Civil Code.
The two divergent lines of jurisprudence cannot be reconciled upon any legal principle whatever. To be consistent, we ought to adhere to the later decisions and say that the earlier decisions to the contrary were thereby overruled; or we ought to overrule the three very recent decisions, Succession of Lacosst, Perkins v. Brownell-Drews Lumber Co., and Minor v. Young ; so that the members of the legal profession will know what the law is on this subject.
Undertaking to reconcile these very recent decisions with the early decisions to the contrary is merely looking for a distinction where none exists. Articles 918 and-919 of the Civil Code, stating under what circumstances an acknowledged illegitimate child shall inherit from his or her deceased parents, are couched in the same language as-is article 922, stating ¡ under what circumstances the surviving parent or parents shall inherit from “a natural child deceased without posterity.” If a distinction can be drawn between the language used in article 922, allowing the surviving parent or par *117 -ents to inherit from an acknowledged illegitimate child, and the language of articles '918 and 919, allowing an acknowledged illegitimate child to inherit from his or her ■deceased parents, the difference in the language would justify our holding that an illegitimate child cannot inherit from his or her deceased father or mother unless the •child was “duly acknowledged,” and that the ■surviving parent or parents of an illegitimate child can inherit from the deceased ■child without having to prove that the child was “duly acknowledged.” But, surely, it •cannot justify or excuse our holding that an illegitimate child shall inherit from his or her deceased father or mother without proof of the child’s having been duly acknowledged, while we are maintaining that the father and mother cannot inherit from their deceased illegitimate child without proof of the child’s having been duly acknowledged. Article 918 allows natural children to inherit from their mother, only “when they have been duly acknowledged by her”; and article 919 allows them to inherit from their father, if he “has duly acknowledged them.” Article 922, saying when the surviving parent or parents shall inherit from an acknowledged illegitimate child, does not contain the word “duly.” It does not, in terms, require that the illegitimate child shall have been “duly” acknowledged. If the word “duly” was chosen advisedly in articles 918 and 919, and means “in due form,” and if the omission of the word from article 922 was intentional, the reason is that the word “duly” was not deemed necessary in article 922, because the surviving parents can “duly” acknowledge an illegitimate child even after his or her death, whereas, of course, a surviving illegitimate child cannot inherit from his or her parents unless the child was “duly acknowledged” during the lifetime of the parents. I do not know that the omission of the word “duly” from article 922 of the Code was intentional or deliberate. What I mean to demonstrate is that, if there is any justification or excuse for our making a distinction between the kind of proof of acknowledgment that shall be required for an illegitimate child to inherit from his or her father or mother, and the kind of proof of acknowledgment that shall be required for a surviving parent to inherit from his or her illegitimate child, the use of the word “duly” in the articles allowing the illegitimate child to inherit, and its omission from the article allowing the surviving parent or parents to inherit, would only justify our making the distinction exactly the reverse of what Mr. Justice Provosty recognized in Succession of Lacosst.
It will not do to say that, although this court is committed to the doctrine that the father or mother cannot inherit from his or her illegitimate child unless the child has been duly acknowledged by one of the methods required by article 203 of the Civil Code, nevertheless, the court is not committed to the doctrine that an illegitimate child cannot inherit from his or her father or mother without proof that the child was duly acknowledged by one of the methods required by article 203 of the Code. If this court were committed to a doctrine, recognized in several decisions, declaring railroad companies liable in damages for the killing of cows, under certain given circumstances, and if we were thereafter called upon to decide the question of liability of a railroad company for killing a bull under identically the same circumstances, and if we should then discover that our previous decisions on the subject of cows were contrary to the statutory law on the subject, we would not attempt to absolve ourselves of responsibility for perpetuating the error of our decisions regarding cows, by attempting to draw a line of distinction between the killing of cows and the killing of bulls. I have heard that the law *119 yers in one of the Western states, when they, cite a decided case as a precedent in support of an argument, never say, as the Louisiana lawyers say, that the precedent “fits like a glove,” or is “on all fours,” or is a “ringer” for the case being argued. They say that the precedent is a “goose case.” The expression arose from the perplexity of a so-called “case lawyer,” who was unprepared to advise his client whether he was liable in damages because his geese had trespassed on his neighbor’s lawn. The lawyer said he had found several .cases where the owners were held liable because their horses, cows, sheep, goats, or dogs had committed acts of trespass; but he could not find a “goose case.” The distinction which he observed was that his “goose case” was not “on all fours.”
I see no difference, in principle, between the case before us and the Succession of Lacosst, supra, and Perkins v. Brownell-Drews Lumber Co., supra. My opinion, therefore, is that this case should be decided the same as those cases were decided.
I submit that Mr. Justice PROYOSTY may be mistaken in his statement, in the majority opinion in this case, referring to the decision rendered in the case of Minor v. Young, 149 La. 583, 89 South. 757, viz.:
“A majority of the court were disposed at first to depart from the jurisprudence heretofore established on that point, and hold that the modes prescribed in article 203 were exclusive. But on application for a rehearing that view was changed. and the conclusion reached (Justices O’Niell and Dawkins dissenting), that this long-established jurisprudence should be adhered to.”
The fact that a rehearing was granted in Minor v. Young is not evidence of a change in the- conclusion which the court had reached. It is evidence merely that the court was willing to reconsider the case. It happens quite often that the granting of a rehearing does not result in a change of the conclusion already reached by the court. As a matter of fact, the opinion and decree rendered in the case of Minor v.‘ Young was not changed and has become final. Pending the rehearing, the attorneys on both sides, having settled the controversy out of court, filed a joint request that a decree should be entered making our judgment in the case final. The decree was entered, and the opinion has been published officially. 148 La. 610, 87 South. 472. I can recall from memory, and without looking for precedents, two cases in which the opinions, of this court have been quoted several times as authority in subsequent decisions, even though the opinions so quoted were rendered in cases in which rehearings were granted, and which were settled by compromise pendin'g the rehearings. I refer to the case of Wadkins v. Atlanta & Shreveport Oil & Gas Company (not reported) and the case of Boutte v. New Orleans Terminal Co., 139 La. 945, 72 South. 513.
Referring now to Mr. Justice Provosty’s dissenting opinion in Minor v. Young, which I regard tnow as having been adopted as the majority opinion in the present case, the dissertation on the definition of “bastard,” as I understand it, is founded upon the idea that a bastard, or unacknowledged illegitimate child, if he be not an adulterous or incestuous bastard, has the same rights that a bastard, or unacknowledged illegitimate child, if he were not an incestuous or adulterous bastard, had under the French and Spanish law. It was pointed out in the majority opinion in Minor v. Young, and it seems to be conceded in the majority opinion now rendered in the present case, that, under the French and Spanish law, proof of ’ the paternity or maternity of an illegitimate child, provided he was not an incestuous or adulterous bastard, conferred upon the child the same right of inheritance which is conferred by the Civil Code of this state upon an illegitimate child who has been acknowledged by one of the forms prescribed in arti *121 ele 203 of the Code. In other words, a “natural child,” in the French Code, meant a bastard who was neither incestuous nor adulterous, and who, therefore, either by being acknowledged by his father or by proving his paternal descent, would have the same right of inheritance which is conferred by the Civil Code of this state only upon an illegitimate child who has been duly acknowledged by his father. The Civil Code of this state makes it impossible for a reader to doubt that the only class of illegitimate children who are included in the definition of “natural children” are those who have been duly acknowledged by their father and whose parents were capable of contracting marriage at the time of conception. Article 202, the provisions of which were not in the Code Napoleon, declares that bastards are “contradistinguished” from “illegitimate children who have been acknowledged by their father,” and that those who have been so acknowledged “are called natural children.” In other words, the article declares in plain and unambiguous language that illegitimate children who have been acknowledged by their father are not called bastards, but are called natural children. It declares, in equally plain language, that illegitimate children who have not been acknowledged by their father are contra-distinguished by the appellation of “bastards.” It declares, in equally plain language, that illegitimate children whose father and mother were incapable of contracting marriage at the time of conception are also contradistinguished by the appellation of “bastards.” And it declares, in equally plain language, that illegitimate children whose father is unknown are also contra-distinguished by the appellation of “bastards.” By the plain language of the Civil Code of this state, therefore, an illegitimate child who has not been acknowledged by his father is not a “natural child.” He is contradistinguished by the appellation of “bastard,” even though his father and mother were capable of contracting marriage at the time of conception, and even though his father’s identity be ever so well known and established.
Article 203 of the Civil Code of this state, the provisions of which were not in the Code Napoleon, declares how the acknowledgment of an illegitimate child shall be made, i. e., by a declaration executed before a notary public in presence of two witnesses, or in the registering of the birth or baptism of the child.
In the early decisions of this court, declaring that proof of the paternal descent of a bastard child confers upon the child the same right of inheritance that was conferred on such child by the French or Spanish law, and the same right of inheritance which is conferred by the Civil Code of this state only upon a child who has been acknowledged in one of the methods prescribed by article 203, the court overlooked or ignored the fact that the provisions of articles 202 and 203 were not contained in the Code Napoleon and were not prescribed in the Spanish law. The Court, therefore, fell into the error of declaring that proof of paternal descent, which, under article 242 of the Civil Code of this state, entitles an unacknowledged illegitimate child to nothing more than .alimony, was equivalent to the formal acknowledgment required by article 203 to elevate an illegitimate child from the status of “bastard” to that of a “natural child” and to allow the child to inherit from his or her parents.
The error of the early decisions has been recognized and pointed out in many recent decisions. The error was pointed out in Succession of Vance, 110 La. 760, 34 South. 767, and the earlier decisions were then bluntly criticized. It was said:
“These decisions and others of like tenor seem to rest mainly upon articles 208 and 209 of the Code, both of which refer to proof of paternal descent rather than to paternal acknowledgment. Thus, article 208 says, illegitimate children who have not been legally ac *123 knowledged may be allowed to prove their paternal descent, and article 209 says, in the case where the proof of paternal descent is authorized by the preceding article, the proof may be made (1) by all kinds of private writings; (2) when the father, either in public or private, has acknowledged him as his child; or has called him so in conversation, -or has caused him to be educated as such; (3) when the mother of the child was known as living in a state of concubinage with the father and resided, as such, in his house at the time when the child was •conceived.
“These are directions, it will be seen, for proving paternal descent, which is not the same thing as the acknowledgment by the father, and it is acknowledgment by the father which converts the illegitimate child, or bastard, into the ‘natural’ child, and from which spring the rights with which the natural child is invested by the law.
“But though we adhere to the jurisprudence authorizing methods of acknowledgment of illegitimate children otherwise than as laid down in Oiv. Code, art. 203, it is impossible to hold that what Vance said to the witness Lee, as hereinabove set forth, suffices to invest her with the title of a legally acknowledged, or natural child.”
I interpret the paragraph last quoted as meaning, not that the court did adhere to the early jurisprudence which was then so severely criticised, as being contrary to the language of the Code, but that, even if the court should adhere to that jurisprudence, the evidence in the case would not be. sufficient to bring it within the doctrine of the early decisions.
The error of the early decisions was also pointed out in Succession of Lacosst, supra, and, even more plainly, in Minor v. Young, supra.
There was some justification or excuse for the error of confusing the proof of paternal descent, which unacknowledged illegitimate children were permitted to make under articles 208 and 209 of the Code, with the formal acknowledgment required by article 203. The confusion perhaps, arose from the fact that proof of paternal descent consists of proving an informal acknowledgment by the father. That is because, as a rule, acknowledgment by the father is the best or only evidence that can be obtained of the paternal descent of an illegitimate child. But there is no justification or excuse for confusing proof of maternal descent with the formal acknowledgment required by article 203 of the Code; because proof of maternal descent cannot be made by proving that the mother informally acknowledged the illegitimate child. Article 212 declares, with regard to proof of maternal descent:
“But the child who will make such proof shall be bound to show that he is identically the same person as the child whom the mother brought forth.”
Therefore, proof of an informal or verbal acknowledgment on the part of the mother would not even be admissible as evidence to prove maternal descent. It seems altogether unreasonable that proof of an informal or verbal acknowledgment on the part of the ■ mother of a bastard child should confer upon the child the right of inheritance conferred only upon a “natural child,” or “duly acknowleded illegitimate child,” notwithstanding such proof would not be admissible to establish the child’s maternál descent, or permit the child to claim alimony from the mot¿er. Article 242 declares that an illegitimate child who has not been legally acknowledged cannot even sue his father or mother for alimony until he has proven his paternal or maternal descent as the case may be, and has obtained a judgment establishing the paternal or maternal descent, as the case may be. Therefore, if the doctrine contained in the majority opinion is correct, a bastard or unacknowledged illegitimate child may inherit the estate of his mother, upon proof merely “that he is identically the same person as the child whom the mother brought forth.” The Code, on the contrary, declares that a bastard, or unacknowledged illegitimate child, who has proven his maternal descent and has had the same established by a judicial decree, is entitled to nothing more than alimony; and *125 article 245 declares that all bastards, even adulterous and incestuous bastards, are entitled to alimony from their mother and her ascendants, after having established their identity and having had it declared by a judicial decree. It is therefore certain that the mere proof of maternal descent does not entitle a bastard or an unacknowledged illegitimate child to claim anything more than alimony from the mother.
It must be borne in mind, too, that article 208 only allows those illegitimate children “who have not been legally acknowledged” to prove their paternal descent. That is because a child who has been legally acknowledged by his father is not a bastard but a natural child, and is entitled, not only to alimony from his father, but also to the right to inherit from him, if he dies without leaving descendants or ascendants or collateral relations or a surviving wife. Rev. Civ. Code, art. 919. On the other hand, article 212 declares that illegitimate children of every description, that is, natural children or bastards, even incestuous and adulterous bastards, may make proof of their maternal descent, provided the mother be not a married woman. Therefore, when it comes to proving • maternal descent, the proof and judicial declaration of which allows the illegitimate child nothing more than alimony from the mother and her ascendants, all classes of bastards have equal rights.
It must be borne in mind that Lillie G. Taylor was not acknowledged by her father in any way whatsoever, not in private conversation or otherwise, as far as the record shows. She is therefore not a natural child, as defined in the Code, but is contradistinguished by the appellation of “bastard.” She has never obtained1 a judicial decree establishing her paternal descent, and would not even be entitled to alimony from her father if he were living. As the identity of her father is unknown, as far as this record shows, she would not be entitled to inherit from her mother, even if the latter had acknowledged her in one of the methods prescribed by article 203 of the Code. Article 918 declares that “natural children,” not bastards, are called to the legal succession of their natural mother, who has died without leaving lawful children or descendants; and article 919 declares that “natural children,” not bastards, are called to the inheritance oij their father if he has died without leaving descendants or ascendants or collateral relations or a surviving wife. There is no possibility of a confusion of the terms “natural children” and “bastards”; because article 202 declares that they are contradistinguished, the natural children being only those who have been acknowledged by their father, and the bastards being of three classes, (1) those who have not been acknowledged by their father, or (2) those whose father and mother were incapable of contracting marriage at the time of conception, or (3) those whose father is unknown.
Article 920 declares that “bastards,” as contradistinguished from the “natural children” referred to in article 918 and 919, are not entitled to inherit the estates of the natural father or mother in any case, “the law allowing them nothing more than mere alimony,” viz.:
“Bastard, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the eases above mentioned, the law allowing them nothing- more than a mere alimony.”
In reference to this article of the Code, Mr. Justice Provosty says, in his dissenting opinion in Minor v. Young, which I regard as the basis of the majority opinion in this case:
“I am perfectly free-to admit that article 920, with the comma in it after the word bastard, gives rise to an ambiguity when read in connection with article 202, classifying as bastards illegitimate children unacknowledged by the father or whose father is unknown. But I believe that I can demonstrate that the *127 said comma was inserted undesignedly, and should be disregarded, so as to have the article read: ‘Bastards adulterous or incestuous children,’ etc. And not, as now, ‘Bastard, adulterous or incestuous,’ etc.”
The learned justice admits that the text of the article in the Code of 1825 reveals the presence of the comma in the same place. It matters not what was the language of the French text of the Code of 1825. Between the English and French text of the Code of 1825, the latter had to prevail if the translation was not precise or literal. But between the French text of the Code of 1825 and the text of the Code of 1870, as to which there is no French text, the language of the Code of 1870 must prevail. The statute of 1870, adopting the Revised Civil Code, declares it to be an amendment and reenactment of the Code of 1825, viz.:
“Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened, that the Civil Code of the State of Louisiana be amended and re-enacted so as to read as follows, to wit: Civil Code of the State of Louisiana, Preliminary Title,” etc.
We therefore have no authority whatever for striking out the comma, after the word bastard, in article 920 of the Code. Mr. Justice Provosty admits that the cutting out of this comma would give the article an entirely different meaning. With the comma after' it, the word “bastard” is an adjective, qualifying the noun children, just as the words “adulterous” and “incestuous” are adjectives qualifying the noun “children.” With the comma after the word “bastard,” the article says that bastard children, adulterous children, or incestuous children shall not enjoy the right of inheriting the estate of their father or mother, the law allowing them nothing more than alimony. Without the comma after the word “bastard,” the article would mean, in very poorly expressed English, that it is only adulterous or incestuous bastards who are not entitled to inherit the estate of their father or mother. Even if we had authority to change the meaning of the law, why should we assume that any English writer, in 1870, would describe adulterous and incestuous bastards thus: “Bastard adulterous or incestuous children”?
To justify the changing of the meaning of article 920, by omitting the comma after the word “bastard,” Mr. Justice Provosty undertakes to demonstrate that, with the comma after the word “bastard,” article 920 has an absurd meaning. I refer, of course, to his dissenting opinion in Minor v. Young, which I regard as the basis for the opinion of the majority in the case before us. The author quotes article 920, precisely as it is written and punctuated, declaring that bastard, adulterous, or incestuous children shall not enjoy the right of inheriting the estate of their natural father or mother in any of the cases above mentioned. He says, very properly, that the expression, “in any of the cases mentioned,” means in the cases mentioned in articles 918 and 919, viz.:
“Art. 918 (912). Natural children are called to the legal succession of their natural mother, when they have been duly acknowledged by her, if she has left no lawful children or descendants, to the exclusion of her father and mother and other ascendants or collaterals of lawful kindred.
“In case the natural mother has lawful children or descendants, the rights of the natural children are reduced to a moderate alimony, which is determined - by the rules established in the title: Of Father and Child.
“Art. 919 (913). Natural children are called' to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state.
“In all other cases, they can only bring an action against their natural father or his heirs for alimony, the amount of which shall be determined, as is directed in the title: Of Father and Child.”
Then immediately follows article 920, declaring that bastard, adulterous, at incestuous children shall not enjoy the right of *129 inheriting the estate of their natural father or mother in any of the cases above mentioned.
Of course, the expression, “in any of the cases above mentioned,” means “in any of the cases” in which “natural children” are allowed to inherit. The second paragraph of article 919 declares that, “in all other cases,” that is, in all cases except those in which the natural father has left neither descendants nor ascendants nor collateral relations nor a surviving wife, in other words, when he has left any one of those survivors, his natural children.can only bring an action against him or his heirs for alimony. Then follows the article declaring that bastards, adulterous, or incestuous children shall not enjoy the right of inheriting the estate of their natural father or mother “in any of the cases above mentioned,” — meaning, of course, in any of the cases in which a natural child might inherit, just as the paragraph immediately preceding, being the second paragraph of article 919, says, “in all other eases,” meaning in cases in which the surviving father is survived by any one of the relations mentioned in the first paragraph of article 919.
Mr. Justice Provosty expresses the opinion that the phrase in article 919, “in all other cases” means (1) in case the bastard, adulterous or incestuous children have not been acknowledged by their father, (2) in case the bastard, adulterous or incestuous children’s father is unknown, or (3) in case the bastard, adulterous or incestuous children were born of parents who were incapable of contracting marriage at the time of conception. Hence the learned justice illustrates and reasons thus:
“Substituting to the word ‘bastard’ in article 920 the definition of this word in article 202, and substituting for the phrase ‘in any of the cases above mentioned’ the article itself, which is thus referred to (article 919), and we have the following:
“Children who have not been acknowledged by their father, or whose father is unknown, or whose father could not have acknowledged them because they were adulterous, ‘shall not enjoy the right of inheriting the estate of their natural father * * * who has duly acknowledged them.’
“What nonsense this is!
“And what greater nonsense it is in the ease of inheritance from the mother; i. e., in the case of article 919. Making the same substitutions, we would have:
“Children who have not been acknowledged by their father, or whose father is unknown, or whose father could not have acknowledged them because they were adulterous, ‘shall not enjoy the right of inheriting the estates of their natural * * * mother * * '* when they have been duly acknowledged by her.’ ”
I admit that the illustration and reasoning leads to nonsense. But it all results from a wrong interpretation of the expression in article 920, “in any of the cases above mentioned.” The truth is there is no justification whatever for the meaning which was given to the expression, “in any of the cases above mentioned.” It means, undoubtedly, in any of the cases in which “natural children” inherit. In that respect, the word “cases,” in the phrase “in any of the eases,” has the same meaning that the word has in the phrase in the last preceding paragraph, “in all other cases.”
I do not find any justification or reason for believing that an illegitimate child can be elevated from the status of bastard to that of a natural child by being acknowledged by the mother alone, eyen though the acknowledgment be in one of the forms prescribed by article 203. It is true, the article declares that the acknowledgment shall be made by a declaration executed before a notary public in the presence of two witnesses by the father and mother, or either of them. But the reason for allowing the mother to acknowledge her illegitimate child is that the child cannot inherit from the mother, according to article 918, even though the child has been acknowledged by the father, unless the child has been also acknowledged by the *131 mother; and, according to article 922 the mother cannot inherit from her illegitimate child even though the child has been duly acknowledged by the father, unless the mother has also formally acknowledged the child. But an illegitimate child cannot inherit from the mother who has duly acknowledged the child, unless the child be a natural child, not a bastard; that is, unless the child has been also duly acknowledged by the father. That is the plain and exact language of articles 202 and 918, when read in connection with each other; and it is not contradicted anywhere in the Code. To illustrate, a child might be acknowledged by the father, and be therefore a natural child, not a bastard, although the identity of the child’s mother might not be known. On the other hand, an illegitimate child, although acknowledged by the mother in one of the methods required by article 203, is yet a bastard, not a natural child, according to the definition in article 202, unless or until the child has been also formally acknowledged by the father in one of the methods required by article 203. Article 922, referring to the estate of a natural child being inherited by either the father or mother who has acknowledged him, or by both parents in equal proportions if he has been acknowledged by both, has reference to a ease where the child is survived by either the father or mother or both. For example, if the deceased illegitimate child was acknowledged by the father, only, he alone can inherit the estate. If the illegitimate child was acknowledged by both parents, either surviving parent may inherit the estate. If the illegitimate child was acknowledged only by the father, and is survived by the mother alone, she does not inherit the estate. If the deceased illegitimate child was not acknowledged by the father, neither of his parents can inherit his estate, even though he was acknowledged by the mother; because, in that case, the child is a bastard, not a natural child, and it is only natural children, not bastards, who can inherit from either parent, or from whom either parent can inherit.
I attach no importance whatever to the fact that article 221 of the Code of 1825, which is article 203 of the Revised Civil Code of 1870, contained a second paragraph,' which was omitted from article 203 of the Revised Civil Code of 1870, viz.:
“No other proof of acknowledgment shall be admitted in favor of children of color.”
It is unreasonable to say that this second paragraph of article 221 of the Code of 1825 was intended to repeal all that wafe said in the first paragraph of the article. Why should the framers of the Code devote a long paragraph declaring in mandatory terms that the acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public in presence of two witnesses, whenever it shall not have been made in the registering of the birth or baptism of the child; and then add a paragraph saying, in substance: “This, however, shall only apply to colored children.” Bear in mind, the expression, “by the father and mother op either of them,” in article 203 of the Revision of the Code of 1870, was, not contained in the corresponding article (221) of the Code of 1825. Therefore the “proof of acknowledgment,” which was not admitted in favor of children of color, by the second paragraph of article 221 of the Code of 1825, had reference to proof of paternal descent; and the word “acknowledgment” was used because, as a general rule, that is the only method of proving paternal descent. Evidence of an informal acknowledgment, however, is not admissible to prove maternal descent. The prohibition against proof of acknowledgment in favor of children of color, therefore, merely forbade them to prove paternal descent. If the framers of the Code of 1825 had meant to say that the strict requirement for the acknowledgment of an illegitimate child, as required by the first paragraph of article *133 221 of the Code of 1825, should apply only to children of color, it would have been a very easy matter to say so. There would have been no sense in first devoting a long paragraph laying down a rigid rule for the acknowledgment of children generally, and concluding with a brief paragraph saying that the rule, however, should only apply to colored children. I consider it too plain to admit of much discussion that the second paragraph had reference to the informal acknowledgment by the father, which, otherwise, would have allowed an unacknowledged illegitimate colored child to claim alimony. Be that as it may, the second paragraph which appeared in article 221 of the Code of 1825 does not appear in article 203 of the Revised Civil Code of 1870; and it is the latter Code that governs this case.
I respectfully dissent from the opinion and decree now rendered in this case.

 149 La. 598.

 149 La. 598.